WATSON v. ST. LOUIS, I. M. & S. RY. CO.

(Circuit Court, E. D. Arkansas, E. D. June, 1909.)

No. 211.

1. COMMERCE (§ 5*)—POWERS OF CONGRESS UNDER COMMERCE CLAUSE.

Under the commerce clause of the Constitution, Congress has the power to regulate the relation of master and servants of carriers by rail engaged in interstate transportation, if limited to employés while engaged in interstate service.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 3–5; Dec. Dig. § 5.*]

2. COURTS (§ 92*)—"OBITER DICTA"—WHAT CONSTITUTES.

General expressions in an opinion which are not essential to a disposition of the cause, on points not presented nor argued to the court, are obiter, and are not permitted to control the judgment of the courts in subsequent cases; but when a question is directly involved in the issues raised, was determined by the trial court, is assigned as error in the assignment of errors on appeal, argued by counsel for all parties, and distinctly decided by the appellate court, a decision of such question is not obiter dictum, although the cause is disposed of on other grounds, and this applies specially when the question involves the power of Congress to enact the legislation.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 335; Dec. Dig. § 92.*

For other definitions, see Words and Phrases, vol. 3, pp. 2051, 2052; vol. 8, p. 7735.]

3. CONSTITUTIONAL LAW (§ 251*) — DUE PROCESS OF LAW — "PRIVILEGES AND IMMUNITIES."

The fifth amendment to the United States Constitution applies only to privileges and immunities which arise out of the natural and essential character of the national government, or are specifically granted or secured to all citizens or persons by the Constitution of the United States. Those fundamental rights which are inherent in and belong to all who live in a free government are privileges and immunities of state citizenship only, and not within the protection of the fifth amendment.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 726, 727; Dec. Dig. § 251.*

For other definitions, see Words and Phrases, vol. 6, pp. 5599–5606.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

4. CONSTITUTIONAL LAW (§ 278*)—DUE PROCESS OF LAW.

A statute, although it indirectly works harm and loss to individuals, is not a taking of property without due process of law within the meaning of that amendment.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 763; Dec. Dig. § 278.*]

5. CONSTITUTIONAL LAW (§ 245*)—EQUAL PROTECTION OF LAWS—PRIVILEGES AND IMMUNITIES—CLASSIFICATION OF CARRIERS.

A statute abolishing the fellow-servant rule, limiting its application to carriers by rail, is neither an arbitrary nor unreasonable classification.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 702; Dec. Dig. § 245.*]

6. COMMERCE (§ 58*)—EMPLOYER'S LIABILITY ACT OF 1908.

The employer's liability act of Congress (Act April 22, 1908, c. 149, 35 Stat. 65) is a valid exercise of the powers granted to Congress by the commerce clause of the Constitution, as it is confined to common carriers by rail engaged in interstate commerce and employés while thus actually engaged. The fact that the act is not limited to injuries caused by the negligence of a fellow servant who is at the time engaged in interstate employment does not make the act, or that part of it abolishing the fellow-servant rule, unconstitutional.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 77; Dec. Dig. § 58.*]

(Syllabus by the Court.)

On Demurrer to the Complaint.

The plaintiff, as administratrix of the estate of her deceased husband, seeks by this action to recover damages under the act of Congress approved April 22, 1908 (chapter 149, 35 Stat. 65) generally referred to as the "Employer's Liability Act." The material allegations of the complaint are: That the defendant is a railway corporation, a common carrier engaged in commerce between the states of Arkansas and Missouri; that on June 19, 1908, plaintiff's intestate was employed as fireman on one of defendant's locomotives then engaged in interstate commerce; and that the injuries causing the death of her intestate were caused by the negligent acts of defendant's agents and servants while he was so employed. The complaint then sets out very fully how the accident which caused the death of her intestate occurred, charging that it was caused by a collision with another train by reason of the negligence of the conductor and engineer of the train on which her intestate was employed as fireman in failing to meet the other train at a siding as directed by the train dispatcher. The jurisdiction of this court is invoked solely upon the ground that the action is one arising under the laws of the United States; there being no diversity of citizenship alleged. The defendant demurred to the complaint, setting up numerous grounds, but which may be summarized as follows: (1) That the complaint fails to state a cause of action. (2) That the act of Congress under which a recovery is sought is unconstitutional.

Johnson & Burr, for plaintiff.

J. W. Canada, E. B. Kinsworthy, Lewis Rhoton, and P. R. Andrews, for defendant.

The Attorney General of the United States, by leave of the court, filed a brief as amicus curiæ on the constitutionality of the act.

TRIEBER, District Judge (after stating the facts as above). Without setting out the complaint in full, it is sufficient to say that it states a good cause of action under the act of Congress. It alleges every fact necessary to show: That the death of plaintiff's intestate result-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ed from the negligence and wrongful acts of the conductor and engineer in charge of the train and locomotive on which her intestate was, at the time, employed and acting as a fireman; that at the time of the accident the train on which he was employed was engaged in transportation between the states of Arkansas and Missouri; that he left, him surviving, a widow and two children for whose benefit this action is brought by the plaintiff as administratrix of his estate, duly appointed by a court of competent jurisdiction. This leaves only one other question to be determined: Is the act of Congress constitutional?

The constitutionality is attacked upon many grounds, but some of them have been so many times determined by the Supreme Court of the United States that they can no longer be considered as open questions, and for this reason will not be discussed in this opinion. That Congress has the power under the commerce clause of the Constitution to regulate the relation of master and servant to the extent that such regulations are confined solely to interstate commerce, and employés while engaged in such traffic, was fully determined in Employer's Liability Cases, 207 U. S. 463, 494, 28 S. Ct. 141, 52 L. Ed. 297, which arose under Act June 11, 1906, c. 3073, 32 Stat. 232 (U. S. Comp. St. Supp. 1907, p. 891). That act was held to be unconstitutional, but upon grounds other than a want of power on the part of Congress to enact it. It is true that the court, had it seen proper, might have declined to pass upon that question; but for reasons fully stated in the opinion the majority of the court considered it its duty to determine that question, and it did so in a very carefully considered opinion, after a most exhaustive argument of eminent counsel. Six of the justices concurred in this part of the opinion. Mr. Justice Peckham, in his concurring opinion, did not dissent from that conclusion, merely stating that "he was not prepared to agree with all that is stated as to the power of Congress to legislate upon the subject of the relation between master and servant"; the Chief Justice and Mr. Justice Brewer agreeing with this view.

A carefully prepared opinion on an important question of law expressly decided by the trial court (see the opinions of the trial judges reported in 148 Fed. 986 [Brooks v. Southern Pac. Co.] and 997 [Howard v. Illinois Cent. R. Co.]), properly brought before the court by the assignment of errors and the pleadings in the case, and which was fully and ably argued by counsel for all the parties, cannot be considered as obiter even if the action could be, and in fact was, determined upon other issues. This is peculiarly applicable to cases in which grave constitutional questions only are involved. Congress having evidenced by the enactment of the statute that, in its opinion, legislation on that subject should be enacted, when the constitutionality of such an act is questioned upon a number of grounds, among which is one attacking the power of Congress to legislate upon that subject, courts, as a rule, decide that question, even if the act must be held to be unconstitutional upon other grounds. If the power exists, Congress had indicated its desire to exercise it. The Supreme Court evidently presumed that, if the act is invalid for some reason other than a want of power to enact it, it would be re-enacted, omitting or

changing those provisions which make it unconstitutional. That is what Congress did in this instance.

The act of 1906 was held to be unconstitutional by the Supreme Court in an opinion filed on January 6, 1908, 207 U. S. 463, 28 Sup. Ct. 141, 52 L. Ed. 297. The President, on January 31, 1908, in a special message to Congress, called its attention to that decision and earnestly recommended the enactment of a statute to apply only to the class of cases upon which the court had decided it can constitutionally legislate, and, Congress being in session at that time, the present act was introduced, was carefully considered by the Judiciary Committee of the House, and thereafter enacted as a law at that session, and approved by the President on April 22, 1908, only a little more than three months after the Supreme Court had declared the former act unconstitutional. The same rule was followed in United States v. Delaware & Hudson Co. (decided May 3, 1909) 213 U. S. 366, 29 Sup. Ct. 527, 53 L. Ed. ——. In a later case, decided at the same term at which the Employer's Liability Case was determined, the decision of the court on that point was treated as a final determination that the power existed. Adair v. United States, 208 U. S. 161, 178, 28 Sup. Ct. 277, 282, 52 L. Ed. 436, where it was said:

"In that case (the Employer's Liability Cases) the court sustained the authority of Congress, under its power to regulate interstate commerce, to prescribe the rule of liability as between interstate carriers and its employés in such interstate commerce in cases of personal injuries while actually engaged in such commerce."

The rule as to what does not constitute a dictum is that a decision of a legal proposition within the issues of the case, presented and argued by counsel to the court, and by the court, with its reasons therefor, decided, is not obiter, although the court could have determined the case on other propositions, but elected to settle that proposition. Railroad Company v. Schutte, 103 U. S. 118, 143, 26 L. Ed. 327; Jones v. Habersham, 107 U. S. 174, 179, 2 Sup. Ct. 336, 27 L. Ed. 401; Union Pacific Ry. Co. v. Mason City & Ft. Dodge R. R. Co., 128 Fed. 230, 236, 64 C. C. A. 348, affirmed in 199 U. S. 160, 165, 26 Sup. Ct. 19, 50 L. Ed. 134.

In Michael v. Morey, 26 Md. 239, 261, 90 Am. Dec. 106, the court held:

"When the question was directly involved in the issues raised, and the mind of the court was directly drawn to and distinctly expressed upon the subject, the decision cannot be said to be obiter dictum."

No doubt the court anticipated the objection now made, and, in order to meet it, Mr. Justice White, who delivered the opinion of the court, said:

"While it may be, if we indulged, for the sake of argument, in the hypothesis of limited power upon which the second proposition rests, that it would result that a consideration of the first proposition would be unnecessary because the act would be found to be repugnant to the Constitution because embracing provisions beyond such assumed and restricted authority, we do not think we are at liberty to avoid deciding whether, in any possible aspect, the subject to which the act relates is within the power of Congress. We say this, for if it be that, from the nature of the subject, no power whatever over the same can, under any conceivable circumstances, be possessed by Congress, we

ought to so declare, and not, by an attempt to conceive the inconceivable, assume the existence of some authority, thus, it may be, misleading Congress and giving rise to future contention." 207 U. S. 494, 28 Sup. Ct. 143, 52 L. Ed. 297.

The official reporter of the court treated it as the decision of the court and included it in the headnotes.

It is next claimed that the decision in the Employer's Liability Cases is not conclusive of the act now before the court, because the act of 1906 applied to "every common carrier" engaged in interstate traffic, while the act now under consideration applies only to "common carriers by rail." This, it is claimed, "is an illogical and arbitrary basis of classification, in violation of the fifth amendment to the Constitution." The only cases relied upon to sustain this contention are those in which the constitutionality of state statutes was attacked as being within the prohibition of the equal protection clause of the fourteenth amendment. It might be sufficient to dispose of this contention to say that the fifth amendment, which is a limitation on the powers of Congress only, does not contain the equal protection clause found in the fourteenth amendment which applies solely to the powers of the states. United States v. New York, N. H. & H. R. R. Co. (C. C.) 165 Fed. 742, 745, decided by the full bench of Circuit Judges of the First Circuit.

A constitutional provision, prohibiting the states from doing certain acts, does not by implication apply to Congress. The prohibition against a state impairing the obligations of a contract, it has been repeatedly held, does not apply to Congress. Legal Tender Cases, 12 Wall. 457, 549, 20 L. Ed. 287; Sinking Fund Cases, 99 U. S. 700, 718, 25 L. Ed. 504; Mitchell v. Clark, 110 U. S. 633, 4 Sup. Ct. 170, 28 L. Ed. 279.

In United States ex rel. v. Delaware & Hudson Co. (decided May 3, 1909) 213 U. S. 366, 29 Sup. Ct. 527, 53 L. Ed. ——, it was claimed that the commodities clause of Act June 29, 1906, c. 3591, 34 Stat. 584 (U. S. Comp. St. Supp. 1907, p. 894), usually referred to as the "Hepburn act," was unconstitutional as violative of the due process clause of the fifth amendment because it excepted timber from the provisions of the act, and that it did not apply to all carriers, but the court overruled these contentions, saying:

"Deciding, as we do, that the clause, as construed, was a lawful exercise by Congress of the power to regulate commerce, we know of no constitutional limitation requiring that such a regulation when adopted should be applied to all commodities alike. It follows that even if we gave heed to the many reasons of experience which have been suggested in argument against the exception, and the injustice and favoritism which it is asserted will be operated thereby, that part can have no weight in passing upon the question of power. *And the same reasons also dispose of the contention that the clause is void as a discrimination between carriers.*"

See, also, Addyston Pipe & Steel Co. v. United States, 175 U. S. 211, 20 Sup. Ct. 96, 44 L. Ed. 136.

Besides, the due process clause of the fifth amendment only applies to the privileges and immunities "which arise out of the natural and essential character of the national government, or are specifically granted or secured to all citizens or persons by the Constitution of

the United States," and not those fundamental rights which are inherent in and belong to all who live under a free government. These latter privileges are "inherent in state citizenship, and are privileges or immunities of that citizenship only." This question has been very learnedly discussed in the late case of Twining v. New Jersey, 211 U. S. 78, 97, 29 Sup. Ct. 14, 53 L. Ed. 97, where Mr. Justice Moody analytically reviews the previous decisions of the Supreme Court on that subject.

But, assuming that the limitations are the same, that the "due process" clause of the fifth amendment is broad enough to include the "equal protection of the laws," and that for this reason the construction placed upon that provision of the fourteenth amendment should apply to causes involving the interpretation of the fifth amendment, still the contention on behalf of defendant could not be sustained. In every instance in which state statutes abolishing or modifying the fellow-servant rule, and limiting the act to railroads only as in the act now under consideration, have been attacked as being in violation of the "equal protection" clause of the fourteenth amendment, the Supreme Court of the United States has overruled the contention and sustained the validity of the acts, declaring that such classification by the legislative department is permissible, and not within the prohibition of that amendment. Missouri Pacific Ry. Co. v. Mackey, 127 U. S. 206, 8 Sup. Ct. 1161, 32 L. Ed. 107; Minneapolis, etc., R. R. Co. v. Herrick, 127 U. S. 210, 8 Sup. Ct. 1176, 32 L. Ed. 109; Chicago, etc., R. R. Co. v. Pontius, 157 U. S. 209, 15 Sup. Ct. 585, 39 L. Ed. 675; Tullis v. Lake Erie & Western R. R. Co., 175 U. S. 348, 351, 20 Sup. Ct. 136, 44 L. Ed. 192; St. Louis, etc., R. R. Co. v. Callahan, 194 U. S. 628, 24 Sup. Ct. 857, 48 L. Ed. 1157.

So well was the law deemed to be settled, when the last-cited case came before the Supreme Court on error to the Supreme Court of Missouri, that the affirmance was by a memorandum opinion.

In Minnesota Iron Co. v. Kline, 199 U. S. 593, 26 Sup. Ct. 159, 50 L. Ed. 322, the court even went a step further, and held that a state statute changing the fellow-servant rule as to employés of railroads, but which excepted uncompleted roads, is not violative of the "equal protection" clause of the fourteenth amendment, despite that exception. As stated in Bachtel v. Wilson, 204 U. S. 36, 27 Sup. Ct. 243, 51 L. Ed. 357:

"The selection, in order to become obnoxious to the fourteenth amendment, must be arbitrary and unreasonable, not merely possibly, but clearly and actually so."

The latest case on the subject of classification is Heath & Milligan Co. v. Worst, 207 U. S. 338, 354, 28 Sup. Ct. 114, 52 L. Ed. 236, where the court did not deem it necessary to cite authorities, saying:

"We have declared many times, and illustrated the declaration, that classification must have relation to the purpose of the Legislature; but logical appropriateness of the inclusion or exclusion of objects or persons is not required. A classification may not be only arbitrary, but necessarily there must be great freedom of discretion even though it result in ill-advised, unequal, and oppressive legislation."

It is also claimed that the act is in violation of the fifth amendment as imposing liabilities which, in effect, deprive the carriers by rail of property without due process of law. In the Legal Tender Cases, supra, the same proposition was advanced. It was earnestly insisted that the act was in violation of the spirit of the fifth amendment, which forbids taking private property for public use without just compensation or due process of law. The court, in overruling this contention, said:

"That provision has always been understood as referring only to a direct appropriation, and not to consequential injuries resulting from the exercise of lawful power. It has never been supposed to have any bearing upon or to inhibit laws that indirectly work harm and loss to individuals. A new tariff, an embargo, a draft, or a war may inevitably bring upon individuals great loss; may, indeed, render valuable property valueless. They may destroy the worth of contracts. But whoever supposed that, because of this, a tariff could not be changed, or a nonintercourse act or an embargo be enacted, or a war be declared?" 12 Wall. 551, 20 L. Ed. 287.

Nor does the fact that the act changes an existing rule of law in permitting the recovery of damages for injuries for which there could be no recovery at common law or under pre-existing statutes make an act of Congress void under the fifth amendment, or a state statute under the fourteenth amendment. Wilmington Mining Co. v. Fulton, 205 U. S. 60, 74, 27 Sup. Ct. 412, 417, 51 L. Ed. 708, where the court said:

"And even although the liability imposed upon the mine owners to respond in damages for the willful failure of the mine manager and mine examiner to comply with the requirements of the statute was not in harmony with the principles of the common law applicable to the relation of master and servant, it being competent for the state to change and modify those principles in accord with its conceptions of public policy, we cannot infer that the selection of mine owners as a class upon which to impose the liability in question was purely arbitrary and without reason."

Other cases in which state statutes of this nature have been held valid are hereinbefore cited.

The next question to be considered is whether the fact that the act is not limited to injuries caused by the negligence of fellow servants who are, themselves, engaged at the time in interstate employment, but permits a recovery by the injured servant who at the time was engaged in interstate service, but was injured by the negligence of a fellow servant not so engaged, makes it invalid. In the Employer's Liability Cases, Mr. Justice White, in delivering the majority opinion of the court, used the following language, on which great stress is laid by learned counsel for the defendant:

"Thus, the liability of a common carrier is declared to be in favor of 'any of its employés.' As the word 'any' is unqualified, it follows that liability to the servant is coextensive with the business done by the employers whom the statute embraces; that is, it is in favor of any of the employés of all carriers who engaged in interstate commerce. *This also is the rule as to the one who otherwise would be a fellow servant, by whose negligence the injury or death may have been occasioned, since it is provided that the right to recover on the part of any servant will exist, although the injury for which the carrier is to be held resulted from 'negligence of any of its officers, agents or employés.*'" 207 U. S. 498, 28 Sup. Ct. 145, 52 L. Ed. 297.

The italicized portion (which does not so appear in the opinion) is claimed to be a determination by the court that unless Congress also limited the act to injuries caused by fellow servants who were at the time engaged in interstate commerce, the act, or at least that part of it relating to fellow servants, is void. Assuming that the language quoted might possibly justify such a construction, still, unless that particular question was presented and argued to the court and intended to be decided, it would be obiter. From the record of the case it appears beyond question that neither was done; nor was it necessary to a decision of the case. For these reasons it is reasonable to presume that it was merely an inadvertent expression used by the learned justice who delivered the opinion of the court, as a part of his reasoning. A careful perusal of the opinions filed by the trial judges in the two cases, as well as the original briefs filed by the counsel for both sides, fails to show that this question was raised or argued by any of the counsel or considered by any of them or the learned trial judges to be necessary for the determination of the issues involved. Therefore it must be considered as a mere dictum and not a part of the decision of the court.

General expressions in an opinion, which are not essential to dispose of the case, are not permitted to control the judgment of the court in subsequent suits. Cohen v. Virginia, 6 Wheat. 264, 399, 5 L. Ed. 257; United States ex rel. Johnson v. County Court, 96 U. S. 211, 24 L. Ed. 628; Cross v. Burke, 146 U. S. 82, 13 Sup. Ct. 22, 36 L. Ed. 896; McCormick Harvesting Co. v. Aultman Co., 169 U. S. 606, 18 Sup. Ct. 443, 42 L. Ed. 875; Bardes v. Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 4 L. Ed. 1175; Harriman v. Northern Securities Co., 197 U. S. 244, 291, 25 Sup. Ct. 493, 49 L. Ed. 739.

The object of Congress in the enactment of the law was to protect the men employed in this hazardous occupation, in which thousands are annually killed or maimed without any fault of the master himself, but by the negligence of other employés, over whom the servant has no control, and in whose selection he had no voice. The legislation is neither new nor revolutionary. It had been recommended by President Roosevelt in his annual message in 1905, and again in a special message on January 31, 1908. A similar act was passed by the English Parliament as early as 1880, and among the states of the Union a large number have either abolished the fellow-servant rule entirely or modified it materially in respect to employés engaged in hazardous occupations; many of them limiting the change to railroads. Among these are Alabama, Arkansas, California, Connecticut, Colorado, Florida, Georgia, Indiana, Iowa, Kansas, Massachusetts, Minnesota, Missouri, Mississippi, Montana, Nebraska, Nevada, North Carolina, North Dakota, New York, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, South Dakota, Texas, Wisconsin, Virginia, and Wyoming, all of which acted on that subject long before Congress. Similar statutes have also been for a long time in force in most of the continental states of Europe. This evidences that such legislation is in compliance with the demands of an enlightened public opinion. To effect this purpose it is wholly immaterial what the employment of the fellow servant is. Public opinion, as expressed

through the legislative departments of the nation, as well as many of the states, evidently considered it an injustice that persons injured, or in case of death, the surviving members of the family, should become burdens on the public and objects of charity, and therefore considered it better public policy that the employer should be required to make some provision for them, charging the moneys thus expended to expenses of management, or cost of production, and collect it indirectly from the public. The enactment of such a statute not only results in protecting the employés of carriers by rail, but at the same time guards the public welfare by securing the safety of travelers. The latter is one of the reasons mentioned by the court in Johnson v. Southern Pacific Ry. Co., 196 U. S. 1, 17, 25 Sup. Ct. 158, 49 L. Ed. 363, involving the safety appliance act. As stated by Mr. Justice Moody, in his dissenting opinion in the Employer's Liability Case:

"Any law which promotes the safety of either (meaning the employé or passengers) promotes the safety of both." 207 U. S. 533, 28 Sup. Ct. 159, 52 L. Ed. 297.

That provisions for the safety of the employés of a railway if not directly, at least indirectly, add to that of the passengers, cannot be doubted. The knowledge of the fact that, in case of an accident, some provision will be made for him in case of disability, or for the family dependent upon him if death results from the injury, relieves the employé's mind to that extent of the anxiety incidental to the fear entertained by every man, and especially if he has a family dependent upon his earnings, as to what would become of them if he became helpless or is killed. This anxiety, ever present to those engaged in such a hazardous occupation as that of railways propelled by the dangerous agency of steam, may materially affect the safety of the passengers intrusted to him in an emergency in which cool judgment is so essential. By making this provision for him, legislators might well have reasoned that the safety of the passengers is as much promoted as that of the employé. In fact, the elementary principles of law governing the fellow-servant rule and the reasons therefor, show that it is wholly immaterial what the employment of the fellow servant whose negligence caused the injury is. The liability of the master for injuries caused by the wrongs committed by his servants while acting about the business of the master and within the scope of his employment is based upon the maxim of respondeat superior; but, when the fellow-servant rule was first established, it was held that this maxim does not apply so as to make the master responsible for injuries inflicted upon his servants by the negligence of a fellow servant. The main reason assigned for this exception is that of assumption of risk. Priestley v. Fowler, 3 Mees. & W. 1, and Hutchinson v. York, N. C. & B. R. Co., 5 Exch. 343, 19 L. J. Exch. 296, the leading English cases; Murray v. South Carolina R. Co., 1 McMul. (S. C.) 385, 36 Am. Dec. 268, and Farwell v. Boston & Worcester R. Co., 4 Metc. (Mass.) 49, 38 Am. Dec. 339, the earliest American cases on that subject; Railroad Co. v. Fort, 17 Wall. 553, 557, 21 L. Ed. 739; Pollock's Essay on Jurisp. pp. 127–133.

If Congress has the power to abolish the rule so far as it applies

to master and servant when engaged in interstate commerce, then the employment of the servant whose wrong or negligence caused the injury is clearly immaterial, as the liability of the master by the repeal of that rule is imposed by the maxim of respondeat superior. Congress having by the enactment of this statute abolished the fellow-servant rule as to employés while engaged in interstate commerce, such servant, when so engaged to serve a master who is a carrier by rail engaged in interstate transportation, does not undertake, as between himself and his employer, to assume the risk of negligence upon the part of a fellow servant. And, in order to prevent the evasion of the provisions of this act, Congress, by section 5 (Act April 22, 1908, c. 149, 35 Stat. 66), declares:

"That any contract, rule, regulation or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this act, shall, to that extent, be void."

But, aside from that, courts have nothing to do with the wisdom of such legislation, as that has been wisely left by the Constitution to the lawmaking department. In St. Louis, Iron Mountain & S. Ry. Co. v. Taylor, 210 U. S. 281, 295, 28 Sup. Ct. 616, 621, 52 L. Ed. 106, the court, in reply to a similar contention, said:

"To this we reply: If it be the true construction, its harshness is no concern of the courts. They have no responsibility for the justice or wisdom of legislation, and no duty except to enforce the law, as it is written, unless it is clearly beyond the constitutional power of the lawmaking body."

As the powers of Congress are limited to those granted by the Constitution, and the only provision of that instrument authorizing such legislation is the commerce clause, and that is limited to "commerce with foreign nations and among the several states and Indian tribes," it can, of course, only legislate for the safety of those employed in those branches of commerce, and not in intrastate carriage. That is all the act under consideration attempts to do. It is limited to those who are in the employment of railroads engaged in commerce between the states and while they are actually engaged in such employment. What difference does it make what the employment of the fellow servant is—whether interstate or intrastate? The safety of the employés of an interstate train, as well as of the passengers intrusted to their care, can in no wise be affected by that. Congress having the exclusive power to regulate interstate commerce, that power necessarily includes the right to regulate the relation of the master and servant operating such trains and legislate for the safety of the employés. Johnson v. Southern Pacific Ry. Co., supra; Schlemmer v. Buffalo, etc., Ry. Co., 205 U. S. 1, 27 Sup. Ct. 407, 51 L. Ed. 681; Employer's Liability Cases, supra.

If the contention of defendant is sustained, the effect would be that although the employé of a carrier by rail engaged in interstate transportation is injured while engaged on an interstate train, if the cause of the injury was the negligence of a fellow servant not engaged at the time in interstate work, Congress is powerless to provide for a recovery of compensation for the injuries suffered. Therefore, if an engineer or fireman on an interstate train is injured by reason of the

negligence of a switchman or other employé of a train operated on a branch line, which is used exclusively for intrastate business, the failure of Congress to except such accidents from the provisions of the statute makes it unconstitutional as being in excess of its powers under the Constitution. The same result would follow if a telegraph operator on such a branch line fails to transmit or deliver a message from the train dispatcher directing the conductor of the interstate train to go on a siding for the purpose of letting an intrastate train pass on the main line, and by reason of such negligence there is a collision. In State v. Chicago, Milwaukee & St. Paul R. Co. (Wis.) 117 N. W. 686, the court, speaking of a similar question, said:

"The direction and dispatching of every train on an interstate railway necessarily involves knowledge in the train dispatcher of all other trains which are in the same vicinity at the same time, and also an ability to control such other trains. An interstate train from Milwaukee to Chicago cannot be safely forwarded if, under the direction of a separate employé, a local train may be moving between Milwaukee and Racine over the same track at the same time, or nearly so. The very switching at local stations must be within the knowledge and under the control of him who is to decide upon and direct the most important of interstate transportation. Obviously division of authority over these subjects would be fraught with great perils and delays to both kinds of transportation. Hardly any act of a train dispatcher on a busy railroad can be conceived which does not affect both interstate and domestic commerce. He cannot move or stop the most distinctively local train without affecting the interstate train, or vice versa. No extra or special can be put on the division without adjustment of other trains. Of course, also, every interstate train carries some purely intrastate freight or passengers. Many purely domestic trains carry some freight or passengers in transit to extrastate destination. It would seem that any severance of control over state from interstate trains involved so much of confusion and probability of danger, and its possibility even is so doubtful and experimental that no Legislature would absolutely precipitate it without careful consideration nor without providing in the act for the event of failure of such experiments."

There is nothing in the Employer's Liability Cases to warrant the construction claimed on behalf of defendant. What the court did decide in that case was that as the act under consideration included all employés of an interstate carrier, even if they (the employés) were engaged in an employment wholly disconnected from the interstate business, citing "employés of a purely local branch operated wholly within a state, employés in repair shops, construction work, accounting and clerical work, storage elevators and warehouses, not to suggest, besides, the possibility of it being engaged in other independent enterprises," and then held that:

"As the act thus includes many subjects wholly beyond the power to regulate commerce and depends for its sanction upon that authority, it results that the act is repugnant to the Constitution."

No doubt Congress, had it seen proper to do so, could have limited it to certain fellow servants, such as are employed only in interstate service or in the same or different departments of the common employment, as has been done by some of the states. See acts of Arkansas, Indiana, Massachusetts, Mississippi, Missouri, Montana, Ohio, Oregon, South Carolina, Texas, Utah, and Virginia. But the failure to do so cannot invalidate the act.

In Northern Securities Co. v. United States, 193 U. S. 197, 331, 24 Sup. Ct. 436, 48 L. Ed. 679, the contention was that the defendant was not a railroad company, that it was a corporation created by one of the states and its corporate powers limited to buying, selling, and holding stock, bonds, and other securities, and for that reason Congress had no power to regulate it; but the court held that, under the power to regulate commerce among the several states, Congress had the authority to enact the statute, and that it applied to the Securities Company. Another case in which one of the issues was very much like that now under consideration is Loewe v. Lawlor, 208 U. S. 274, 301, 28 Sup. Ct. 301, 52 L. Ed. 488. It was there claimed that the Sherman Anti-Trust Act July 2, 1890, c. 647, 26 Stat. 209 (U. S. Comp. St. 1901, p. 3200), was not applicable, or, if applicable, not within the power of Congress to enact it, because the defendants were not themselves engaged in interstate commerce; but the contention was by the court overruled. The same conclusion was reached in United States v. Debs (C. C.) 64 Fed. 724, 745, 755, affirmed in 158 U. S. 564, 15 Sup. Ct. 900, 39 L. Ed. 1092.

Other statutes of similar nature have been repeatedly enacted by Congress, and, when questioned, sustained. Act July 3, 1866, c. 162, 14 Stat. 81, digested as sections 5353, 5354, 5355, Rev. St. (U. S. Comp. St. 1901, pp. 3637, 3638), makes it a criminal offense to transport or ship, by a carrier engaged in interstate transportation, dangerous explosives, regardless of the fact whether the shipment is interstate or intrastate, provided the carrier is at the time engaged in interstate transportation. The gravamen of the offense is to transport, or cause to be transported, any of the prohibited articles on any vessel or vehicle employed in interstate traffic. It was the passengers and employés on such vehicles or vessels whom Congress sought to protect, and under the commerce clause had the right to protect. The danger to them was as great if the explosion occurred from an intrastate shipment as an interstate. The constitutional limitation was fully met by confining the provisions of the act to vehicles employed at the time in interstate traffic. The constitutionality of this act seems never to have been questioned. In fact, the only reported case construing this act, which the court has been able to find, is United States v. Saul (D. C.) 58 Fed. 763.

In Act Cong. December 21, 1898, c. 28, 30 Stat. 755, 763 (U. S. Comp. St. 1901, p. 3081), "An act to amend the law relating to American seamen, for the protection of such seamen, and to promote commerce," the language used applied to all seamen, regardless of whether the vessel on which they were employed was engaged in interstate or intrastate commerce. In Patterson v. Bark Eudora, 190 U. S. 169, 179, 23 Sup. Ct. 821, 47 L. Ed. 1002, the constitutionality of this act was attacked upon the ground now raised and also that it applied to foreign vessels. While the court declined to determine what its decision might be in a case relating to contracts of sailors for services to be performed wholly within the state, as that question was not before it, it sustained the constitutionality of the act in an action in which the vessel was engaged in interstate commerce, and whether

the vessel is foreign or not. The argument of counsel for the government, cited with approval by the court, might well be applied here:

"Moreover, as 90 per cent. of all commerce in our ports is conducted in foreign vessels, it must be obvious that their exemption from these shipping laws will go far to embarrass domestic vessels in obtaining their quota of seaman. To the average sailor it is a consideration while in port to have his wages in part prepaid; and if, in a large port like New York, 90 per cent. of the vessels are permitted to prepay such seamen as ship upon them, and the other 10 per cent., being American vessels, cannot thus prepay, it will be exceedingly difficult for American vessels to obtain crews. This practical consideration, presumably, appealed to Congress and fully justified the provisions herein contained." 190 U. S. 179, 23 Sup. Ct. 824, 47 L. Ed. 1002.

It is well known that, while there may be some few railroads engaged wholly in intrastate traffic, there are practically none engaged in interstate transportation which is not also engaged in intrastate carriage of freight or passengers. To limit the liability of the railroad to its employés on a train employed in interstate traffic for injuries caused by fellow servants engaged in like employment would in many instances make the act valueless and of no benefit to the employé. In the language above quoted:

"This practical consideration, presumably, appealed to Congress and fully justified the provisions herein contained."

The safety appliance acts (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174], amended by Act April 1, 1896, c. 87, 29 Stat. 85 [U. S. Comp. St. 1901, p. 3174], amended by Act March 2, 1903, c. 976, 32 Stat. 943 [U. S. Comp. St. Supp. 1907, p. 885]) make it unlawful to haul any car in interstate transportation not equipped with certain appliances deemed necessary for the safety of employés. When these statutes first came before the courts for construction, it was contended that they could only apply to carriers whose lines traverse more than one state; otherwise they would be in excess of the powers possessed by Congress. Some of the trial courts sustained this contention, but upon appeal it has been practically uniformly held that they apply to all railroads, although operating entirely within a single state, independently of all other carriers, if any interstate freight is carried on any car of the train. The test of the application of the act is held to be the transportation of any articles of interstate commerce, and, as thus construed, the act has been enforced as a constitutional exercise of the powers vested in Congress. United States v. Colorado & N. W. R. Co., 157 Fed. 321, 85 C. C. A. 27, 15 L. R. A. (N. S.) 167; United States v. Colorado & N. W. R. Co., 157 Fed. 342, 85 C. C. A. 48; United States v. Atchison, etc., Ry. Co. (C. C. A.) 163 Fed. 517; Chicago, etc., Ry. Co. v. United States (C. C. A.) 165 Fed. 423; United States v. Southern Pacific Co. (C. C. A.) 169 Fed. 407; Union Stock Yards Co. v. United States (C. C. A.) 169 Fed. 404; Belt R. Co. of Chicago v. United States (C. C. A.) 168 Fed. 542; Wabash R. Co. v. United States (C. C. A.) 168 Fed. 1.

The constitutionality of the bankruptcy acts of Congress has at different times been questioned upon similar grounds, but they have been uniformly sustained. Sturges v. Crowninshield, 4 Wheat. 122,

4 L. Ed. 529; Nelson v. Carland, 1 How. 265, 11 L. Ed. 126; Hanover Nat. Bank v. Moyses, 186 U. S. 181, 22 Sup. Ct. 857, 46 L. Ed. 1113.

In The Daniel Ball, 10 Wall. 557, 566, 19 L. Ed. 999, it was claimed that the provisions of Act Cong. July 7, 1838, c. 191, 5 Stat. 304, amended by Act Aug. 30, 1852, c. 106, 9 Stat. 61, making it unlawful for any steam vessel to transport merchandise or passengers upon the navigable waters of the United States without a license, did not apply to a steamer engaged as a common carrier between places in the same state, although a portion of the merchandise transported by her is destined to places in other states; she not running in connection with or in continuation of any line of steamers or other vessels, or any railway line leading to or from another state. But the court overruled this contention and held that the act applied to such cases, and that it was not an infringement on the rights of the states. Mr. Justice Field, who delivered the opinion of the court, said on that subject:

"And we answer, further, that we are unable to draw any clear and distinct line between the authority of Congress to regulate an agency employed in commerce between the states, when that agency extends through two or more states, and when it is confined in its action entirely within the limits of a single state. If its authority does not extend to an agency in such commerce, when that agency is confined within the limits of a state, its entire authority over interstate commerce may be defeated."

While that case was one arising on the navigable waters of the United States, it is now well settled that the power of Congress under the commerce clause is as complete upon the land. In re Debs, 158 U. S. 564, 15 Sup. Ct. 900, 39 L. Ed. 1092; United States v. Colorado & N. W. R. Co., supra. It may be proper to state that this same objection was made by Messrs. Littlefield and Bannon, of the House Judiciary Committee, in their minority report on this bill, but failed to receive the approval of either House of Congress.

The only reported case involving this act, which the court has been able to find, is Fulgham v. Midland Valley R. Co. (C. C.) 167 Fed. 660, decided by Judge Rogers of the Western district of this state; but the constitutionality of the act, it seems was not questioned, and not determined by the learned judge.

In view of the conclusions reached, it is unnecessary to determine whether that question can be raised by defendant in this case, as the complaint shows on its face that the accident was caused by reason of the negligence of the conductor and locomotive engineer of the train on which plaintiff's intestate was the fireman, and which train, it is alleged, was at the time engaged in interstate transportation. Cases on that point which may be consulted are Supervisors v. Stanley, 105 U. S. 305, 311, 26 L. Ed. 1044; In re Garnett, 141 U. S. 1, 12, 11 Sup. Ct. 840, 35 L. Ed. 631; Clark v. Kansas City, 176 U. S. 114, 118, 20 Sup. Ct. 284, 44 L. Ed. 392; Patterson v. Bark Eudora, supra; State of Missouri v. Dockery, 191 U. S. 170, 24 Sup. Ct. 53, 48 L. Ed. 133; Cooley on Const. Lim. (7th Ed.) p. 250.

In the opinion of the court the act in controversy is a valid exercise of the powers granted to Congress by the Constitution, and the demurrer must be overruled.