UNITED STATES v. LOUISVILLE & N. R. CO. ·

(District Court, W. D. Kentucky. November 1, 1907.)

RAILROADS—SAFETY APPLIANCE ACT—USE OF DEFECTIVE CAR.

A car of defendant railroad company was found in its yards in Louisville loaded with pig iron which had been shipped from another state, and with the chain forming a part of the coupler on one end broken, rendering the device inoperative. The defect was discovered by defendant, but could not be repaired where the car was without blocking the entire business of the yards, and the place of business of the consignee of the iron was only four blocks distant and nearer than the repair track, and defendant therefore took the car to the consignee, where it was unloaded, and from there to the repair track, where it was repaired. It did not appear what company had brought the car to the yards. *Held,* that defendant took the most practicable course after discovering the defect, and was not guilty of a violation of Safety Appliance Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174].

[Ed. Note.—Duty of railroad companies to furnish safe appliances, see note to Felton v. Bullard, 37 C. C. A. 8.]

On Trial to the Court Without a Jury.

George Du Relle, and Luther M. Walter, for the United States.
Benjamin D. Warfield and Helm & Helm, for defendant.

EVANS, District Judge. The government seeks in this suit to recover the penalty of $100 for an alleged violation of the safety appliance act in using Chesapeake & Ohio car No. 26,285 in the movement of interstate traffic on or about March 26, 1907, when the coupling and uncoupling apparatus on the "B" end of the car was out of repair and inoperative, in this: That the chain connecting the lock pin or lock block of the coupling lever was broken on that end of the car, thus making it necessary for a man to go between cars in order to couple or uncouple them. The parties by stipulation waived a jury, and the case was heard by the court. It appears from the testimony that at or about 7:55 a. m., on March 26, 1907, the government inspectors examined the car on one of defendant's tracks in its Water Street yards, and found that the alleged defects existed. There was nothing, however, to show how the car came to defendant's yards from the other side of the Ohio river, though it contained pig iron from Irontou, O., consigned to the Ewald Iron Company, whose business is conducted near by the place where the inspection was made. When the defect came to defendant's knowledge, as it did that morning, the problem presented itself as to whether the defendant would block its entire business at that very important point of connection with other railroads by endeavoring to make the repairs on a busy track, or remove the car either to its repair track in that vicinity, or take it first to the consignee and unload it. The consignee was the most accessible, being only four city blocks distant, and about 10:30 a. m. of the same day the car was taken to Ewald's place near by and unloaded, and then taken to a repairing point where the defect was remedied.

Knowing something of the localities mentioned and of the great business done there, the court credits the evidence on that point, and is of opinion that the course pursued was the most sensible and practical

one; and, having regard to the principles this day announced in an opinion delivered in the case of United States v. Illinois Central Railroad Co., 156 Fed. 182, the court thinks that the testimony fails to show beyond a reasonable doubt the existence of every element necessary to constitute the offense alleged in the petition, within the true intent and meaning of the act of Congress, and will, therefore, find and adjudge that the defendant is not guilty as charged in the petition. And any other result would be obviously unjust and oppressive, and not warranted, we think, by any sensible construction of the statute. The only use of the car by the defendant was to get it as speedily as possible off the busy track and to a place where the defects in the coupling could be supplied. Unloading it at Ewald's was an incident in the accomplishment of this object. No course could well have been more reasonable under the circumstances than the one pursued, and there was no testimony offered by the government tending to show that such defects could practically have been remedied away from repairing points. It was not the case of a handhold merely, as to which the ease of putting one on is obvious.