CHICAGO, M. & ST. P. RY. CO. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit.  November 27, 1908.)

No. 2,640.

1. COMMERCE (§ 27*) — SAFETY APPLIANCE ACTS—EQUIPMENT OF CARS—INTERSTATE COMMERCE.

The hauling by a railroad company from one state to another of a car not equipped with the required safety appliances, upon its own trucks, as a part of a train of other cars moving in interstate commerce, is a use of the defective car in violation of the safety appliance act of March 2, 1893, c. 196, 27 Stat. 531 (U. S. Comp. St. 1901. p. 3174), as amended by acts of April 1, 1896, c. 87, 29 Stat. 85, and March 2, 1903, c. 976, 32 Stat. 943 (U. S. Comp. St. Supp. 1907. p. 885), though it is empty and is being transported to a repair shop in the state of its destination.

[Ed. Note.— For other cases, see Commerce, Dec. Dig. § 27.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. COMMERCE (§ 27*) — SAFETY APPLIANCE ACT — EQUIPMENT OF CARS — INTER-
STATE COMMERCE.

    Where a freight car loaded with lumber brought from another state was
delivered to defendant railroad company on an exchange track a few
blocks from its final destination, and after being moved from such track by
defendant without inspection was found to have a broken coupler, so that
it could not be coupled without going between the cars, it was being used
by defendant in interstate commerce in violation of Act March 2, 1893, c.
196, 27 Stat. 531 (U. S. Comp. St. 1901, p. 3174), as amended by acts of
April 1, 1896, c. 87, 29 Stat. 85, and March 2, 1903, c. 976, 32 Stat. 943 (U.
S. Comp. St. Supp. 1907, p. 885).

    [Ed. Note.—For other cases, see Commerce, Dec. Dig. § 27.*]

In Error to the District Court of the United States for the South-
ern District of Iowa.

    J. C. Cook (H. Loomis, on the brief), for plaintiff in error.

    Luther M. Walter (Marcellus L. Temple, on 'he brief), for defend-
ant in error.

Before HOOK and ADAMS, Circuit Judges, and CARLAND, Dis-
trict Judge.

HOOK, Circuit Judge. This was an action by the United States
against the Chicago, Milwaukee & St. Paul Railway Company, a rail-
road corporation engaged in interstate and local commerce, to recover
penalties for four separate violations of the safety appliance statute.
Act March 2, 1893, c. 196, 27 Stat. 531 (U. S. Comp. St. 1901, p. 3174),
amended by the acts of April 1, 1896, c. 87, 29 Stat. 85, and March
2, 1903, c. 976, 32 Stat. 943 (U. S. Comp. St. Supp. 1907, p. 885).
Judgment was rendered against the company upon each of the four
counts of the petition, but the only complaint here is of the recovery
upon the first and fourth.

    The evidence under the first count showed these facts without dis-
pute: A west-bound freight train of the company was wrecked near
Elmira, in the state of Missouri, and some of the cars were ditched.
Among them was an empty, foreign refrigerator car. In replacing
this car on the track the coupler at one end was pulled out and the draft
timbers and sills so broken as to be useless. It was then taken to the
town of Elmira, the damaged end was chained to another car which
was also injured in the wreck, and in that condition the two cars were
incorporated in an east-bound freight train of the company and sent
to its general repair shops at Dubuque, in the state of Iowa, about 350
miles from Elmira. During this interstate journey the refrigerator
car moved upon its own trucks, was empty, and was not equipped at
its damaged end with the safety appliances prescribed by the statute.

    Our conclusion is that the hauling by a railroad company from one
state to another of a car not equipped with the required safety appli-
ances, upon its own trucks, as a part of a train of other cars moving
in interstate commerce, is a use of the defective car in violation of
the act of Congress, though it is empty and is being transported to a
repair shop in the state of its destination. Had the car in question
been put upon a flat car and so transported from Missouri to Iowa,

that would have been a movement in interstate commerce, for traffic may as well consist of the property of carriers as of the property of merchants. In such a case the law would have required that the flat car be equipped with safety appliances. But instead of adopting that course the company used the injured car as the vehicle of its own movement, and it would seem as though the duty to comply with the requirements of the statute still remained. Even if the car did not itself carry traffic, it was engaged in intercourse between the states. The particular purpose of the movement or the character of the vehicle running on the rails between points in different states is not important. The statute applies to an engine which hauls but does not carry freight, to a dining car for the refreshment of passengers (Johnson v. Southern Pacific, 196 U. S. 1, 25 Sup. Ct. 158, 49 L. Ed. 363), to an empty freight car (Voelker v. Railway [C. C.] 116 Fed. 867), and even to a steam shovel car consisting of machinery bolted to a platform supported on trucks (Schlemmer v. Railway, 205 U. S. 1, 27 Sup. Ct. 407, 51 L. Ed. 681). In the last case the court said the phrase "used in moving interstate traffic" occurring in the act of March 2, 1893, should not be taken in a narrow sense. The car in question was one of the connecting links between the engine and the caboose, and was a constituent part of a train moving on an interstate mission. Moreover, the case is wholly within the spirit of the act of Congress, for the presence in such a train of an empty, crippled car having no appliances as prescribed by section 2 of the act, or no grab irons or hand holds required by section 4, or with drawbars higher or lower than as fixed under section 5, albeit the car is being forwarded for repairs, threatens the very dangers to life and limb against which Congress has commanded the maintenance of safeguards. It is said it was not intended that the two cars chained together should be separated before they reached the repair shops, but no one could foretell that an emergency would not arise requiring it, and the probability or improbability of it being necessary for an employé to go between the cars cannot qualify the duty of the carrier to observe the requirements of the statute. We pass by the evidence of the parties as to the existence or nonexistence of facilities for repairing the car in Missouri. Whether the duty of the carrier should be made to depend upon its course in maintaining suitable repair shops in the state where cars may need repairs is a question for Congress. The present statute makes no provision upon that subject, and a court cannot interpolate one. These conclusions follow from the act of 1893, and we forbear discussing the larger questions arising under the amendment of 1903.

These were the facts under the fourth count: Another railroad company delivered to the defendant upon an exchange track in its yards at Ottumwa, in the state of Iowa, a string of six freight cars among which was a foreign car loaded with lumber that had come from a point in the state of Arkansas and was consigned to an industry located a few blocks distant from the exchange track. A switching crew of the defendant company with a switch engine pulled the cars out of the track where they had been placed, and were engaged in distributing them when it was discovered that the coupling appliance on the foreign

car would not work so it could be uncoupled from the car next to it. A switchman then went between the ends of the cars and with his hands manipulated the coupler of the opposite car and so detached them. The car with the defective coupler was then put back on the exchange track from whence it was taken. The defect consisted of a broken finger or lifting key that worked within the coupling block. The break would not appear to an external view, but there was substantial evidence that a mere manipulation of the lever without moving the car would disclose it. At the conclusion of the evidence each party requested a directed verdict in its favor; the trial court granted the request of the government. There had been no delivery of the car in question at its ultimate destination, and the switching of it from the time it was taken by defendant's employés on the exchange track to the time of the discovery of the defect was in the course of such delivery and constituted a use in interstate commerce. There was no proof of such an inspection of the car while it was at rest on the exchange track as would have disclosed the condition of the coupling appliance, and there was no proof indicating the defect was caused while the switching crew were performing their duties. It cannot, therefore, be inferred that the finger or lifting key might have been broken at the time it was discovered to be out of order. The duty of defendant under the statute is an absolute one, and is not discharged by the exercise of reasonable care. The case is controlled by the principles announced in St. Louis, Iron Mountain & Southern Railway Co. v. Taylor, 210 U. S. 281, 28 Sup. Ct. 616, 52 L. Ed. 1061, and by this court in United States v. Atchison, Topeka & Sante Fé Railway Co. (C. C. A.) 163 Fed. 517, and United States v. Denver & Rio Grande Railroad Co. (C. C. A.) 163 Fed. 519.

The judgment is affirmed.