UNITED STATES v. SOUTHERN PAC. CO.

(Circuit Court of Appeals, Eighth Circuit. April 3, 1909.)

No. 2,892.

1. RAILROADS (§ 229*)—EQUIPMENT OF TRAINS—SAFETY APPLIANCE ACTS.

The safety appliance acts (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]; Act April 1, 1896, c. 87, 29 Stat. 85; Act March 2, 1903, c. 976, 32 Stat. 943 [U. S. Comp. St. Supp. 1907, p. 885]), prohibiting railroads from using equipment not fitted with couplers which can be uncoupled without the necessity of a man going between the ends of the cars, imposes an absolute duty on carriers of interstate commerce to so maintain their equipment used in interstate commerce, which duty is not performed by the exercise of reasonable care.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 229.*

Duty of railroad companies to furnish safe appliances, see note to Felton v. Bullard, 37 C. C. A. 8.]

2. RAILROADS (§ 254*)—SAFETY APPLIANCE ACTS—MOVING DEFECTIVE CARS—PENALTIES—INSTRUCTIONS.

In an action against an interstate carrier to recover penalties for the moving of equipment in interstate commerce not equipped with automatic couplers which can be operated without the necessity of a man going between the ends of the cars, an instruction that if the cars in question were defective, and were being actually used in moving interstate traffic, or in connection with other cars at the time of moving such traffic, defendant might continue such movement, if and as long as it was reasonably necessary to do so in order to get the cars repaired, was erroneous.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 254.*]

In Error to the District Court of the United States for the District of Utah.

Hiram E. Booth (William M. McCrea and Luther M. Walter, on the brief), for plaintiff in error.

George H. Smith (P. L. Williams and John G. Willis, on the brief), for defendant in error.

Before VAN DEVANTER, HOOK, and ADAMS, Circuit Judges.

ADAMS, Circuit Judge. This was a civil action in eight counts to recover penalties for that number of violations of the safety appliance laws of the United States. Act March 2, 1893, c. 196, 27 Stat. 531 (U. S. Comp. St. 1901, p. 3174); Act April 1, 1896, c. 87,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

29 Stat. 85; Act March 2, 1903, c. 976, 32 Stat. 943 (U. S. Comp. St. Supp. 1907, p. 885). These statutes make unlawful the use of any locomotive engine in moving interstate traffic unless it is equipped with a power-driving wheel brake and an appliance for operating the train brake system, and render unlawful the hauling or using of any car in moving interstate traffic when not equipped with couplers coupling automatically by impact and which can be uncoupled without the necessity of a man going between the ends of the cars. Two counts of the complaint are founded upon the use of engines, and the other six upon the use of cars, not equipped, the former with brakes, and the latter with couplers, as required by law. A verdict was found and judgment rendered in favor of the United States on the two counts relating to the engines, and in favor of the defendant on the other six counts. This writ of error, prosecuted by the United States, challenges the judgments rendered against it on these last-mentioned counts.

The evidence tended to show that at the several times stated in the complaint the couplings on each of the six cars in question were defective, that all but one of them carried interstate traffic, and that one formed a part of a train of other cars which were being used in that traffic. There was evidence tending to show that these cars, in their defective condition and loaded as just stated, were hauled by the defendant carrier from a repair track to an interchange track, or vice versa, and otherwise in and about the yard of the defendant company in Ogden, Utah; that this yard was much congested; that the scarcity of repair men, who ordinarily made repairs on the repair track, made an unusual amount of switching necessary; that the system of handling bad-order cars in the Ogden yard was to move them only so far as was necessary in order to get them out of the way of cars which were in good order; that the movement of such cars was limited to the Ogden yard, and made only for the purpose of separating the bad-order cars from the good-order cars, or to place them where they could be conveniently repaired. In view of this and other like evidence the trial court charged the jury as follows:

"It is immaterial as to the distance over which the car is used, unless it was used simply for the purpose of repairing the defect, and used only when necessary for that purpose. There is no mechanism, no device, that may not get out of repair; and an interpretation must not be placed on the statute that will impose a liability for the failure to perform a duty impossible of discharge. So that a movement of these cars after the coupler is out of repair, that is simply for the purpose of having it repaired, and is reasonably necessary for that purpose, under the conditions then confronting the defendant, would not be a violation of this act. But any greater movement than is reasonably necessary for that purpose, under the existing conditions then confronting the defendant, provided this greater movement is also a movement of interstate traffic, to which I have already called your attention, is a violation of the law."

Exception was duly preserved to this portion of the charge, and the giving of it is the only error assigned and now relied on by the United States. This portion of the charge declares, in substance, that a movement of cars used in interstate traffic not equipped as prescribed by the safety appliance law, when and so far only as is reason-

ably necessary for repair, is not a violation of the law. Since the decision by the Supreme Court of the case of St. Louis, I. M. & S. Ry. Co. v. Taylor, 210 U. S. 281, 28 Sup. Ct. 616, 52 L. Ed. 1061, we have uniformly held that the safety appliance law imposed an absolute duty upon carriers of interstate commerce to equip and maintain their engines and cars used in or in connection with that service in the way prescribed by that law, and that the performance of this duty is not excused by the exercise of reasonable care. United States v. Atchison, T. & S. F. Ry. Co. (C. C. A.) 163 Fed. 517; United States v. Denver & R. G. R. Co. (C. C. A.) 163 Fed. 519; Chicago, M. & St. P. Ry. Co. v. United States (C. C. A.) 165 Fed. 423. In the recent case of Chicago & N. W. Ry. Co. v. United States (C. C. A.) 168 Fed. 236, we recognized the doctrine of the former cases, and in view of the amended act of 1903 (32 Stat. 943), which enlarged the scope of the original law, so as to include, not only the engines and cars contemplated in the act of 1893, but "all trains, locomotives, tenders, cars and similar vehicles" used in interstate commerce and "all other locomotives, tenders, cars and similar vehicles used in connection therewith," we undertook to classify the vehicles embraced in the original act as amended. We there said:

"Reading these statutes together, as they have been interpreted by the courts, they include, first, vehicles actually moving interstate traffic; second, such vehicles, though empty, when moving to points for the purpose of receiving interstate traffic, or otherwise commercially used by the carrier; and, third, vehicles used in connection with vehicles embraced in either of the two former classes. This would include cars that were out of repair, and were being transported solely for the purpose of repair, if they were placed in trains whose vehicles come within either of the first two classes."

As a corollary to the classification so made we reached and stated the conclusion that any movement of vehicles after they became defective, for the purpose of repairing them, must, in order to escape the penalties imposed by the act, be "wholly excluded from commercial use themselves, and from other vehicles which are commercially employed." Conformity to the requirements of the law, as so interpreted, it must be admitted, will often be inconvenient and sometimes impracticable; but Congress had before it for consideration the important question of promoting the safety of employés and travelers upon railroads, and in the accomplishment of its purpose it may well be that the legislative mind considered the inconvenience and impracticability of a literal compliance at times with the law, and the consequent infliction of the light penalties imposed for its violation to be of little moment compared with the greater importance of protecting life, limb and property. Drastic measures are frequently necessary to protect and safeguard the rights and interests of the people.

The present case was tried before this court had decided any of the above-mentioned cases, and the learned trial judge, in that part of the charge complained of, plausibly enough applied the rule of diligence recognized by the common law, and thereby modified the absolute duty imposed by Congress upon carriers of interstate commerce. He told the jury, in substance, that even if the cars in question were defective, and were being actually used in moving inter-

state traffic, or in connection with other cars which were at the time moving such traffic, the defendant might continue such movement if, and as long as, it was reasonably necessary to do so in order to get the cars repaired.

This was clearly erroneous, and the judgment must accordingly be reversed, and the cause remanded, with directions to grant a new trial. It is so ordered.