SOUTHERN RY. CO. v. SNYDER.

(Circuit Court of Appeals, Sixth Circuit. June 3, 1913.)

No. 2,321.

1. MASTER AND SERVANT (§ 111*)—INJURIES TO SERVANT—SAFETY APPLIANCE ACT—VIOLATION.

A car of defendant, an interstate railroad company, having a broken drawhead, which rendered it so defective that it could not be coupled to another car without going between them, was left with other cars, some loaded and some empty, on a general transfer track, to be removed to a repair track. In order to so remove it, plaintiff, who was foreman of a switching crew, with another member of this crew was attempting to attach it to the next car by a chain, when he was injured by reason of another switching train striking the standing cars. *Held*, that it was the duty of defendant to leave the disabled car where it would not be in connection with other cars in commercial use, and, not having done so, it was still subject to the provisions of Safety Appliance Act March 2, 1893, c. 196, § 2, 27 Stat. 531 (U. S. Comp. St. 1901, p. 3174), as amended by Act March 2, 1903, c. 976, § 1, 32 Stat. 943 (U. S. Comp. St. Supp. 1911, p. 1314), and under section 8 of the act of March 2, 1893, plaintiff did not assume the risk.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 215–217, 255; Dec. Dig. § 111.*

Duty of railroad companies to furnish safe appliances, see note to Felton v. Bullard, 37 C. C. A. 8.]

2. MASTER AND SERVANT (§ 289*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE.

Plaintiff, having stationed a switchman on top of a box car two cars away to keep watch and warn him of danger before going between the cars to make the coupling, as was shown to be customary, cannot be held chargeable with contributory negligence as matter of law.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089, 1090, 1092–1132; Dec. Dig. § 289.*]

In Error to the District Court of the United States for the Eastern District of Tennessee; Edward T. Sanford, Judge.

Action at law by D. S. Snyder against the Southern Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed. For former opinion, see 187 Fed. 492, 109 C. C. A. 344.

Jourolmon, Welcker & Smith, of Knoxville, Tenn., for plaintiff in error.

Pickle, Turner & Kennerly, of Knoxville, Tenn., for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

KNAPPEN, Circuit Judge. Defendant in error sued for damages for the loss of an arm suffered by him while engaged as foreman of a switching crew in coupling cars in defendant's yards near Knoxville, Tenn. A judgment in his favor was reversed by this court for error in the charge. Southern Railway Co. v. Snyder, 187 Fed. 492, 109 C. C. A. 344. Upon a new trial to a jury, plaintiff again recovered verdict and judgment. On the latter trial, as on the former, the sole

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ground on which recovery was permitted was that the coupling device on the car in question was so out of repair as to make it necessary for one to go between the cars for purposes of coupling and uncoupling, in violation of the federal safety appliance statutes. The opinion on the former review contains a full statement of the facts then appearing. The evidence on the new trial does not differ therefrom in controlling respects.

It is sufficient for present purposes to say that the testimony showed that the "Southern" car in question came into defendant's "Coster Yards," near Knoxville, with one of its drawheads (and thus the coupling apparatus) gone; that the restoring of this coupler was a "light repair," which should regularly have been made in the Coster Yards; that it remained in this condition on the storage tracks of these yards for 25 days, when it was started for Lenoir City, Tenn. (in a train composed entirely of bad-order cars), for repair by a private company at that place, in accordance with defendant's custom to bunch in the Coster Yards, for such destination, cars requiring "heavy repairs," until a train load should accumulate; that after starting for Lenoir City the car came into defendant's "K. & O. Yards," whereupon a car inspector ordered it out of the train for repair in those yards, for the reason that the light repairs needed should be there made; that the car was placed with several other cars, some loaded and some empty, on track No. 5, which was a transfer track connected with a repair track, and marked to be taken out for repairs. The testimony further showed that while plaintiff and one of his crew were attempting to fasten a chain (which had been put on the end of the Southern car) to the coupler on the car next to it, and toward the engine (which was to the east and connected with from three to eight cars already picked up) operated by plaintiff's switching crew, by means of a pin through the coupler of the latter car, for the purpose of setting the Southern car off the transfer track and on the repair track, plaintiff's hand was caught and crushed between the draft timbers of the Southern car and the drawhead of the adjoining car, by reason of another switching train of about 30 cars coming into collision with the cars on the transfer track to the west of where plaintiff was working. The testimony tended to show that track No. 5 was one of a series of ten or more tracks used for switching and transfer (and to some extent for storage), including one or more repair tracks; that these transfer and switching tracks were used indiscriminately for cars, whether commercially employed or not; that all kinds of cars, loaded, empty, and bad-order, "heavy repairs and light repairs," were customarily switched over this track No. 5; and that on track No. 5 at the time the Southern car was placed thereon, and at the time the attempt was being made to remove it therefrom, were cars then and there commercially engaged and movements being actively carried on in the making up and unmaking of trains and the distribution of cars commercially employed.

Defendant's motion for a directed verdict in its favor, made at the close of the testimony, was denied, and this denial presents the only assignment of error relied upon.

[1] 1. Despite the fact that at the time of the accident the car was without the coupling device required by the Safety Appliance Acts, defendant contends that:

"The only use being made of the car was its removal from service for the purpose of repair, and that if the car was put into any other use, it was done by [plaintiff] himself in violation of his duty and instructions from the company, and therefore he cannot complain of an injury resulting from a violation of the statute brought about alone by him as a representative of the company."

In our former opinion we pointed out, in effect, that while a carrier may, without violating the Safety Appliance Acts, move empty cars by themselves for the purpose of having them placed in condition to comply with those acts, yet, in any movement for the purpose even of repairs, after they have become so defective, such cars must, in order to escape subjection to the act, be wholly excluded from commercial use and from connection with other vehicles commercially employed (St. Louis & S. F. R. R. Co. v. Delk, 158 Fed. 931, 86 C. C. A. 95, 14 Ann. Cas. 233; United States v. Southern Pacific Ry. Co., 169 Fed. 407, 409, 94 C. C. A. 629; Chicago Junction Ry. Co. v. King, 169 Fed. 372, 94 C. C. A. 652); that one of the prominent objects of the federal Safety Appliance Acts is the protection of railroad employés in making up and unmaking trains and sorting cars in connection therewith (Chicago, M. & St. P. Ry. Co. v. Voelker, 129 Fed. 522, 65 C. C. A. 226, 70 L. R. A. 264; Wabash Railway Co. v. United States, 168 Fed. 1, 93 C. C. A. 393; St. Louis & S. F. R. R. Co. v. Delk, supra); that, although the injury occurred while the car was employed in switching and transfer operations, it would not, unless meanwhile withdrawn from connection with cars commercially employed, be relieved from subjection to the act by reason of its own withdrawal from commercial use; but that if the cut of cars to which it was being connected contained cars then and there in commercial use, or if cars in such commercial use were subject to be directly connected with the Southern car, or to come into collision therewith, in the natural and regular course of switching operations, the connection contemplated by the statute might exist, notwithstanding the car was not actually connected up with any cars at the time in commercial use. Since our decision the Supreme Court has decided that the Safety Appliance Acts embrace all locomotives and cars used on any railway which is a highway of interstate commerce, and is not confined exclusively to vehicles engaged in such commerce. Southern Railway Co. v. United States, 222 U. S. 20, 32 Sup. Ct. 2, 56 L. Ed. 72. The distinction recognized in our former opinion between interstate and intrastate commerce thus becomes immaterial. We content ourselves with saying that we adhere to the view expressed in our former opinion, except as so modified by the decision of the Supreme Court referred to, and that the testimony tended to show that plaintiff's injury was occasioned by defendant's wrongful failure to withdraw the car from connection with, as well as liability to collision from, cars commercially engaged.

We are not impressed with the argument that it was unnecessary, in order to move the car, that it be connected with cars in commercial

use; that plaintiff's directions were not to use the car, but to remove it from use; and that he cannot complain if he violated his duty by putting the car into use. In fact, plaintiff testifies that it was necessary to the movement of the car that it be connected with other cars, for the reason that its direct coupling to the engine would result in breaking the cut-off lever thereon. Plaintiff cannot be said to have assumed the risk, for such assumption is abrogated by the statute. Schlemmer v. Buffalo, etc., Ry. Co., 205 U. S. 1, 11, 27 Sup. Ct. 407, 51 L. Ed. 681; s. c., 220 U. S. 590, 31 Sup. Ct. 561, 55 L. Ed. 596. And in our judgment defendant's liability for violation of the safety appliance statutes is not affected by the consideration that plaintiff was merely under general orders to remove the car from the transfer to the repair track, rather than under specific instructions from a foreman. The vice of the situation, as indicated by the tendency of the testimony, is that he could not perform his duty to defendant in handling the car without subjecting himself to the danger of collision through its wrongful association with the general commercial operation of the yards. We think defendant not entitled to direction of verdict on the ground stated.

[2] 2. Defendant contends that plaintiff is conclusively shown to have been guilty of negligence in going between the cars without taking due precautions for his protection from collision, and that for this reason verdict should have been directed in its favor. The defense of contributory negligence is material here because the safety appliance statutes do not take away contributory negligence as a complete defense (Schlemmer v. Buffalo, etc., Ry. Co., supra); and the accident having occurred before the passage of the second Employer's Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1911, p. 1322]), the present case is not affected by the provision of that act which makes contributory negligence operate only in reduction of damages (Winfree v. Northern Pacific Ry. Co., 227 U. S. 296, 301, 33 Sup. Ct. 273, 57 L. Ed. ——).

Plaintiff's negligence is said to consist in this: The engine belonging to plaintiff's switching crew was working from the east end of the yards. In the west end was another switching crew regularly employed in switching cars to and from the various switching and transfer tracks, including track No. 5. It was this crew which switched in the cars causing the collision in question. Before plaintiff went between the cars to make the coupling a switchman belonging to his crew was stationed on a box car—the second car toward the engine from the one at which plaintiff was working. The switchman knew that plaintiff was working between the cars, and it was his duty to watch out for danger in each direction, and to warn plaintiff of the approach of any car liable to effect a collision with the cars in plaintiff's vicinity. There was testimony tending to show that this was the customary means of protection prevailing in those yards under similar circumstances, and with the knowledge and approval of yard superintendents. Plaintiff knew that the switching crew was accustomed to so work in the westerly end of the yards, but did not know that it was then working in his vicinity or liable to put any cars onto

track No. 5, nor could he have so learned from the ground without sending a man back a considerable distance to the west. He testified that he never knew such course to be taken, and that, had he taken it, he would have lost his job. It appears that the switchman on top of the car saw that the switch engine was working at the west end, but by reason of the distance and the growing darkness could not be certain that switching was being done onto track No. 5. He testified that it seemed to him that he so informed plaintiff, but the latter does not admit it. Plaintiff knew that the watchman was on top of the car, and for the purpose of discovering, and warning plaintiff of, any danger of collision. The jury might well have found that plaintiff believed the provision made adequate for his safety, and that the switchman on watch could and would ascertain and warn plaintiff of the approach of any car liable to cause collision with him. Defendant's conclusion that plaintiff must have known that it was impossible for the switchman on watch to afford him protection against a movement of the cars by no means results from the testimony.

We cannot say, as matter of law, that an ordinarily prudent person, under the given circumstances, would have taken other or more effective means for his protection than were taken by plaintiff. It results that plaintiff's contributory negligence did not appear as matter of law, and the court did not err in refusing to direct verdict on this ground.

The judgment of the District Court is affirmed, with costs.