### UNITED STATES v. TRINITY & B. V. RY. CO.

(Circuit Court of Appeals, Fifth Circuit. December 1, 1913.)

RAILROADS (§ 229*)—SAFETY APPLIANCE ACT—CONSTRUCTION.

    Act April 14, 1910, c. 160, § 4, 36 Stat. 298 (U. S. Comp. St. Supp. 1911, p. 1328), supplementary to the Safety Appliance Acts, contains a proviso "that where any car shall have been properly equipped as provided in this act and the other acts mentioned herein, and such equipment shall have become defective or insecure while such car was being used by such carrier upon its line of railroad, such car may be hauled from the place when such equipment was first discovered to be defective or insecure to the nearest available point where such car can be repaired without liability for the penalties imposed by section 4 of this act or section 6 of the Act of March 6, 1893 [chapter 196, 27 Stat. 532 (U. S. Comp. St. 1901, p. 3175)], as amended by the Act of April 1, 1896 [chapter 87, 29 Stat. 85 (U. S. Comp. St. 1901, p. 3175)], if such movement is necessary to make such repairs, and such repairs cannot be made except at such repair point." *Held*, that to entitle a railroad company to the benefit of such proviso it must show that the car was properly equipped at starting on its journey and became defective while in use on its road; and, where it was continued in the train in commercial use after it became defective, that such movement was necessary to reach the nearest point where it could be repaired.

    [Ed. Note.—For other cases, see Railroads, Cent. Dig. § 743; Dec. Dig. § 229.*

    Duty of railroad companies to furnish safe appliances, see note to Felton v. Bullard, 37 C. C. A. 8.]

In Error to the District Court of the United States for the Southern District of Texas; Waller T. Burns, Judge.

Action at law by the United States against the Trinity and Brazos Valley Railway Company. Judgment for defendant on the second count of the petition, and plaintiff brings error. Reversed.

Lock McDaniel, U. S. Atty., of Houston, Tex., and Philip J. Doherty, Sp. Asst. Atty. Gen., of Washington, D. C., for the United States.

N. H. Lassiter, of Ft. Worth, Tex., and Andrews, Ball & Streetman and Coke K. Burns, all of Houston, Tex., for defendant in error.

Before PARDEE and SHELBY, Circuit Judges, and CALL, District Judge.

CALL, District Judge. On January 15, 1913, the plaintiff in error filed its petition against the defendant in error, claiming $100 for each of three violations of the safety appliance acts of Congress.

The charge in the second cause of action, the only one with which we are concerned, is as follows:

---

"For a second cause of action plaintiff alleges that said defendant is, and was during all the times mentioned herein, a common carrier engaged in interstate commerce by railroad in the state of Texas.

"Plaintiff further alleges that in violation of the act of Congress known as the Safety Appliance Act, approved March 2, 1893, contained in 27 Statutes at Large, page 531, as amended by an act approved April 1, 1896, contained in 29 Statutes at Large, page 85, and as amended by the act of March 2, 1903, contained in 32 Statutes at Large, page 943, said defendant on October 25, 1912, hauled on its line of railroad one car, to wit, C. R. I. & P., 32065, as a part of a train engaged in the movement of interstate commerce.

"Plaintiff further alleges that on said date defendant hauled said car as aforesaid over its line of railroad southeasterly from Houston, in the state of Texas, within the jurisdiction of this court, when the coupling and uncoupling apparatus on the 'B' end of said cars was out of repair and inoperative, the coupling chain being disconnected on said end of said car, thus necessitating a man or men going between the ends of the cars to couple or uncouple them, and when said car was not equipped with couplers coupling automatically by impact, and which could be uncoupled without the necessity of a man or men going between the ends of the cars, as required by section 2 of the Safety Appliance Act, as amended by section 1 of the act of March 2, 1903.

"Plaintiff further alleges that by reason of the violation of the said act of Congress, as amended, defendant is liable to plaintiff in the sum of one hundred dollars."

The defendant on the 14th of March, 1913, filed its first amended original answer, first, denying all and singular the allegations in the petition, and, second, pleaded as follows:

"For a further and special answer herein, if required, this defendant says that if it be true that extra freight train No. 38, left Tom Ball on October 25, 1912, destined to Galveston, hauled C. R. I. & P. car No. 32065, * * * that said extra freight train No. 38 was a through train from Tom Ball to Galveston, Tex.; that said train and all the cars therein, including the two cars above mentioned, were inspected by inspectors of the defendant company at Tom Ball, Tex., prior to the time that said train left Tom Ball; that no defects of any kind were found as to * * * and C. R. I. & P. car 32065; that if said two above-mentioned cars were defective in any particular at the time said train reached Houston, that said defects, if any, occurred between Tom Ball and Houston; that said train, as above indicated, was a through train; and that Houston was not a repair point or inspection point for said train; and that the defendant did not have the means or the proper facilities at Houston for making repairs to said defective cars in said train; that Galveston was the nearest repair point in the direction in which said train was moving; and that under the above circumstances defendant was authorized to haul said cars in said train from Houston to the nearest repair point in the direction in which said train was moving, for the purpose of making repairs to said cars as provided and authorized by the amendment of April 14, 1910, to the Safety Appliance Acts as amended by the acts of Congress of April 14, 1910, provided: 'That where any car shall have been properly equipped as provided in this act, and the other acts mentioned herein, and such equipment shall have become defective or insecure while such car was being used by said carrier on its line of railroad, such car may be hauled from the place where such equipment was first discovered to be defective or insecure to the nearest available point where such car can be repaired without liability for the penalties imposed,' etc."

Upon the issues thus made in the pleadings, the parties went to trial; the government producing evidence to show that the cars were defective as charged in the petition at Houston, and were hauled in a train commercially engaged, in this defective condition, from Houston to Galveston. The defendant, on the other hand, introduced evidence

tending to show that the train had been inspected at Tom Ball and no defects existed in said cars; that it maintained no repair shops at Houston, but did at Galveston; that defendant had no inspectors at Houston, and did not inspect through trains at that point, and did not discover the defect to the cars until after arrival at Galveston. The case having been submitted to the jury upon the evidence, under the charge of the court, a verdict was rendered for the plaintiff on the first and third cause of action, and for the defendant on the second, and judgment entered accordingly.

The plaintiff sued out writ of error seeking to reverse the action of the court in rendering judgment for the defendant on the second cause of action, and assigns as error the following:

"First. The court erred to the prejudice of plaintiff in refusing to peremptorily instruct the jury to find for the plaintiff as was orally requested by counsel for plaintiff at the conclusion of the taking of testimony in the case.

"Second. The court erred to the prejudice of the plaintiff in failing to instruct the jury in any part of its general charge that where defendant claims immunity from liability to penalty for moving cars upon which any of the safety appliances are defective, upon the ground that the cars were either so moved to the most available point at which repairs could be made, for the purpose of having such defects repaired, the burden of proof is on the defendant to show by a preponderance of testimony that the existence of such defects were known to defendant's agents and employés in charge and in control of the train to which such defective cars were attached, and that such cars were being moved for the express purpose of having such defects repaired in accordance with the proviso of the Safety Appliance Act of April 14, 1910.

"Third. The court erred to the prejudice of the plaintiff in the seventh paragraph of its general charge in instructing the jury in the second clause, as follows, to wit:. 'If you further believe from the evidence that upon leaving Tom Ball they (the cars complained of) were not defective in the particulars designated, but they were defective upon their arrival at Houston later on the same day, then you would be authorized from the evidence to conclude that the defects named occurred between Tom Ball and Houston. And if you so believe you will be authorized to find for defendants upon counts one and two.' .

"Fourth. The court erred to the prejudice of plaintiff in the ninth paragraph of its general charge by substantially charging the jury the same as in the seventh paragraph hereinbefore complained of in plaintiff's second assignment, the court using the unqualified language following, to wit: 'Then the court instructs you that, notwithstanding the fact that defects existed at Houston, it not being the destination of the train, and that defendant had no facilities at Houston for making of like repairs, then the defendant, under the law, would be authorized to transport the cars to the nearest repair point in the direction in which the train was moving.'

"Fifth. The court erred to the prejudice of plaintiff in refusing to give to the jury as part of the law of the case either and every of five several special charges written on two sheets of paper and numbered consecutively from 1 to 5, inclusive, for the reason that the general charge of the court failed even substantially to cover either of the phases of the law of the case suggested by said five several special charges respectively.

"Sixth. The court erred to the prejudice of plaintiff in the tenth paragraph of its charge, because from the language employed it is very probable that the jury were misled into the belief that, as a matter of law, it was the duty of Inspector Lawson to have called the attention of the conductor of the train to which the defective cars complained of were attached to the defects discovered by his associate and himself while said train was stopping temporarily at Houston, and that the failure to do so relieved the defendant from

liability to penalties for moving said cars on to Galveston, although, as a matter of fact, the said defects had not been discovered by and were unknown to said conductor or any of his crew; and because said language was calculated to, and probably did, influence the jury to believe that in law the discovery of the defects by a government inspector at Houston, although not communicated to the said conductor, had the effect of relieving the defendant from liability the same as if the discovery had been made by said conductor or other agent or employé of the defendant company."

The only assignments of error that can be considered by us are the first and fifth. There are no exceptions shown in the bill of exceptions to any portions of the court's general charge, and the assignments of error based thereon cannot therefore be considered.

The special charges asked by the plaintiff and refused by the court, and to which refusal, each and every, exception was taken and allowed, are five in number, and are as follows:

"1. The burden is on the defendant to bring itself strictly within the letter and reason of the proviso to the Safety Appliance Act of April 14, 1910, permitting the movement under certain circumstances for the purpose of repair.

"2. The complete equipment of a car with all the appliances provided for and required by the Safety Appliance Act of March 2, 1893, as amended April 1, 1896, and March 2, 1903, and the act of April 14, 1910, is a condition precedent to any right of the defendant to haul such car with defective safety appliances for the purpose of repair.

"3. In order to bring itself within the terms of the proviso to the act of April 14, 1910, the defendant must show the place where it first discovered a car to be defective and that it was hauling such defective car from that place to the nearest available point where such car could be repaired, in an honest movement for the purpose of repair. Defendant must further show that such movement was necessary to make such repairs, and that such repairs could not be made except at such repair point.

"4. If you believe that the cars in question were hauled from Houston, Tex., in the defective condition testified to by the government inspector, and if you further believe that the defendant had not discovered the defects, and did not know of them, then defendant cannot be said to have been hauling these cars for the purpose of repair.

"5. The act of April 14, 1910, does not permit the hauling of defective cars in association with other cars, that are commercially used, unless such cars contain live stock or 'perishable' freight."

The act of Congress, approved March 2, 1893, as amended by act approved April 1, 1896, in the second section provides as follows:

"That on and after the first day of January, 1898, it shall be unlawful for any such common carrier to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars."

In April, 1910, the Congress passed an act to supplement the Safety Appliance Acts theretofore approved, which last act was approved April 14th and provided in the fourth section as follows:

"Provided, that where any car shall have been properly equipped, as provided in this act and the other acts mentioned herein, and such equipment shall have become defective or insecure while such car was being used by such carrier upon its line of railroad, such car may be hauled from the place where such equipment was first discovered to be defective or insecure to the nearest available point where such car can be repaired, without liability for the penalties imposed by section four of this act or section six of the act of March 2, 1893, as amended by the act of April 1, 1896, if such movement is

necessary to make such repairs and such repairs cannot be made except at such repair point."

The first question to be determined is: Did the court err in refusing a peremptory instruction to find for the plaintiff?

The proof of the plaintiff showed without contradiction the existence of the defect, and that the car, while this defect existed, was moved in a through freight train engaged in interstate commerce, from Houston to Galveston. The defendant's testimony tended to show an inspection at Tom Ball, the divisional point, and that all cars in that particular train were properly equipped; that the defendant did not maintain at Houston a repair shop, but that the terminal company did repairs for it in cases of necessity; that defendant did not inspect through trains at that point, which was a few hours run from Tom Ball; that it did maintain a repair shop at Galveston, which was a few hours run from Houston. There was evidence tending to show that the defendant was not aware of the defect until it was pointed out to one of its employés in the yard at Galveston.

For the purpose of testing the correctness of the court's ruling on the motion for a peremptory instruction, it must be admitted that the car was equipped properly when the train left Tom Ball to be carried to Galveston.

Does the evidence of the defendant bring it under the proviso of the act of April 4, 1910? Bearing in mind the language of Mr. Justice Harlan, in C., B. & Q. Ry. v. United States, 220 U. S. 559, on page 569, 31 Sup. Ct. 612, on page 613 (55 L. Ed. 582), he uses this language:

"After referring to various cases holding that the omission of Congress to make knowledge and diligence on the part of the carrier ingredients of the act condemned, the trial court said: 'Its omission was intentional, in order that this statute might induce such a high degree of care and diligence on the part of the railway company as to necessitate a change in the manner of inspecting appliances, and to protect the lives and safety of its employés, provided the accident occurs from a defective appliance such as is designated in this act. And for these reasons the jury will be peremptorily instructed to find a verdict for the government.'"

And after discussing approvingly the case of St. L., I. M. & S. R. Co. v. Taylor, in 210 U. S. 281, 28 Sup. Ct. 616, 52 L. Ed. 1061, affirms the judgment of the trial court.

Unless the evidence of the defendant tends to show, in addition to the facts above recited, to wit (that the car was properly equipped at starting on the journey, and became defective while being used on the line of railroad of defendant), that the movement of the car in the train was necessary to repair the defect, and that the repair could not have been made except at such repair point, then the defendant has not brought itself under the proviso, and there was no question of disputed facts to submit to the jury. Certainly there is no evidence in the record that in the slightest degree tends to prove these last-mentioned requisites. Bear in mind that under the Safety Appliance Act of 1893, and the amendments, ignorance of defects does not excuse. The duty to have and maintain in good order the safety appliances required is a positive duty imposed on the carrier by the statute, and that the de-

fendant in the instant case 'seeks to avoid responsibility for the violation of this duty by pleading the proviso of the act of 1910. By all the canons of construction, it must clearly bring itself within the terms of the proviso before it can demand immunity. U. S. v. Dickson, 15 Pet., star page 165, 166, 10 L. Ed. 689.

The case of Galveston, H. & S. A. Ry. Co. v. U. S., 199 Fed. 891, 118 C. C. A. 339, does not militate against or conflict with the views above expressed.

The peremptory instruction should have been given, and the court's refusal to do so is reversible error.

It is not necessary for us to consider the fifth assignment of error, wherein the refusal to give the special instructions numbered from 1 to 5, asked by the plaintiff, is insisted upon. We therefore express no opinion on those.

It is therefore ordered that the judgment of the lower court on count No. 2 of plaintiff's petition be, and the same is hereby, reversed and vacated, and the cause remanded to the lower court for a new trial on said count No. 2 in plaintiff's petition in conformity with the views herein expressed.