The **ALABAMA GREAT SOUTHERN RAILROAD COMPANY,**
Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 15846.

United States Court of Appeals
Fifth Circuit.

May 15, 1956.

8 Cir., 1926, 14 F.2d 705; and II Wigmore on Evidence, Sec. 290, p. 179, and 1955 Pocket Supplement p. 57.

J. Asa Rountree, III, Meade Whitaker, Birmingham, Ala., Cabaniss & Johnston, Birmingham, Ala., of counsel, for appellant.

Leo Meltzer, Atty., Dept. of Justice, Washington, D. C., Atley A. Kitchings, U. S. Atty., Birmingham, Ala., Warren Olney, III, Asst. Atty. Gen., Floyd R. Benny, Atty., Interstate Commerce Commission, Washington, D. C., of counsel, for appellee.

Before RIVES, TUTTLE and JONES, Circuit Judges.

RIVES, Circuit Judge.

The complaint sought the recovery of $700 as penalties for seven separate violations of the Safety Appliance Acts, 45 U.S.C.A. §§ 1–16. On six of the claims the defendant confessed judgment, but defended the one appearing as third. On that claim, the complaint alleged that the defendant hauled the car,

"when the coupling and uncoupling apparatus on the 'B' end thereof was out of repair and inoperative, a portion of the uncoupling mechanism being missing from the coupler on said end of said car, thus necessitating a man or men going between the ends of the cars to couple or uncouple them, and when said car was not equipped with couplers coupling automatically by impact, and which could be uncoupled without the necessity of a man or men going between the ends of the cars."

The case was submitted to the court without a jury upon an agreed statement of facts, as follows:

"1. That freight car C. B. & Q. box car No. 17895, named in the Third Cause of Action was inspected by the defendant, Alabama Great Southern Railroad Company, on May 17, 1954 upon arrival at Norris Yard, and that upon said inspection there was no defect found in regard to the coupler which is the defect complained of. That said car was again inspected on May 17, 1954 by the defendant, Alabama Great Southern Railroad Company, immediately prior to its departure from Norris Yards and upon said inspection there was no defect found in regard to the coupler which is the defect complained of.

"2. That said car moved from Norris Yards in a continuous movement to a point of interchange with the Atlantic Coast Line Railroad at Birmingham, Alabama, a distance of between 5 and 10 miles, during which time the defendant had no opportunity to inspect the car.

"3. The defendant admits the defect alleged in the complaint existed upon inspection by plaintiff's inspectors. Plaintiff admits that the movement for which the penalty is sought is the movement from Norris Yards to the Atlantic Coast Line interchange.

"4. It is agreed that the defect was one which could have occurred during the movement from Norris Yards to the Atlantic Coast Line

interchange, said defect being apparently new."

The district court found the facts as stipulated[1] and concluded as follows:

"2. The defendant hauled freight car C. B. & Q., box car No. 17895, between Norris Yards and the Atlantic Coast Line interchange at a time when the uncoupling apparatus on the 'B' end of the car was out of repair and inoperative. By so doing, the defendant violated the provisions of the Safety Appliance Act, which is contained in 45 U.S.C., Section 2. St. Louis, Iron Mountain, & So. Ry. Co. v. Taylor, 210 U.S. 281, 28 S.Ct. 616, 52 L.Ed. 1061; Chesapeake & Ohio Ry. Co. v. United States, 4 Cir., 226 F. 683; United States v. Trinity & B. V. Ry. Co., 5 Cir., 211 F. 448; Southern Pacific Co. v. United States, 8 Cir., 23 F.2d 61.

"3. Judgment should be entered in favor of the plaintiff."

This appeal is prosecuted from the judgment which followed.

Section 2 of the Safety Appliance Acts, the section allegedly violated, provides:

"§ 2. *Automatic couplers*

"It shall be unlawful for any common carrier engaged in interstate commerce by railroad to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars." 45 U.S.C.A. § 2.

Section 6, which imposes the penalty, provides in part:

"Any common carrier engaged in interstate commerce by railroad us-

ing any locomotive engine, running any train, or hauling or permitting to be hauled or used on its line any car in violation of any of the provisions of sections 1–7 of this title, shall be liable to a penalty of $100 for each and every such violation * * *."

Section 13 is also pertinent:

"Any common carrier subject to sections 11–16 of this title using, hauling, or permitting to be used or hauled on its line, any car subject to the requirements of said sections not equipped as provided in said sections, shall be liable to a penalty of $100 for each and every such violation, to be recovered as provided in section 6 of this title: *Provided,* That where any car shall have been properly equipped, as provided in sections 1–16 of this title, and such equipment shall have become defective or insecure while such car was being used by such carrier upon its line of railroad, such car may be hauled from the place where such equipment was first discovered to be defective or insecure to the nearest available point where such car can be repaired, without liability for the penalties imposed by this section or section 6 of this title, if such movement is necessary to make such repairs and such repairs cannot be made except at such repair point; and such movement or hauling of such car shall be at the sole risk of the carrier, and nothing in this section shall be construed to relieve such carrier from liability in any remedial action for the death or injury of any railroad employee caused to such employee by reason of or in connection with the movement or hauling of such car with equipment

---

1. The district court overruled the defendant's motion for an additional finding as follows: "The defect complained of occurred during the continuous movement from Norris Yards to the point of interchange with the Atlantic Coast Line Railroad." It apparently took the position that, since the evidentiary facts were stipulated, it was in no better position to draw inferences or make conclusions therefrom than is this Court. See Galena Oaks Corp. v. Scofield, 5 Cir., 218 F.2d 217, 219.

which is defective or insecure or which is not maintained in accordance with the requirements of sections 1–16 of this title; and nothing in this proviso shall be construed to permit the hauling of defective cars by means of chains instead of drawbars, in revenue trains or in association with other cars that are commercially used, unless such defective cars contain livestock or 'perishable' freight."

The legal issue sought to be presented by appellant, according to its brief, "is whether there is a violation of the Safety Appliance Acts when a railroad car first becomes defective during a continuous movement and the railroad has no opportunity to inspect the car." The appellant argues that, when the Safety Appliance Acts are reasonably construed, the duty imposed is not "absolute", and there can be no violation until after the railroad has had an opportunity to make an inspection.

■ Appellee insists that the legal issue thus posed by appellant is not really presented because the district court did not find, and this Court should not, that the car first became defective during the continuous movement from Norris Yard to the point of interchange. Initially, of course, the burden of proof rested upon the United States, but, if the defense be treated as a claimed exception to the Safety Appliance Acts, then the burden rested on the defendant to prove the essential evidentiary facts. Schlemmer v. Buffalo, Rochester, & P. Ry. Co., 205 U.S. 1, 10, 27 S.Ct. 407, 51 L.Ed. 681; United States v. Houston Belt & Terminal Ry. Co., 5 Cir., 210 F.2d 421, 425; United States v. Trinity & B. V. Ry. Co., 5 Cir., 211 F. 448; 45 U.S.C.A. § 13, note 66.

■ Assuming that the burden rested on the defendant, we think that it has been fairly met. The continuous movement from Norris Yards to the point of interchange was the movement for which

the penalty is sought. It is stipulated that during that movement the defendant had no opportunity to inspect the car. Prior to that movement, the car had been inspected twice on the day of the alleged violation and no defect was found on either inspection. At the point of interchange the defect was discoverable and was actually found when the car was inspected by Government inspectors. It was an apparently new defect, and was one which could have occurred during the movement from Norris Yards. From all of these admitted facts, it is possible that the defect existed and was overlooked at the time of the two inspections at Norris Yard, but we think that a fair inference should be drawn that the portion of the uncoupling mechanism referred to in the complaint first became missing from the coupler during the movement from Norris Yard to the point of interchange. The district court's conclusion, heretofore quoted, and particularly the authorities cited in support thereof show that the case was considered and decided below on the theory that such was the fact.

Is it then true that a carrier must have had an opportunity for inspection before it can be held liable for hauling or using on its line a car in violation of the Safety Appliance Acts? More accurately, must such an opportunity be afforded after the mechanism becomes so defective or insufficient as to be incapable of functioning?

Sections 1 through 7 of the Safety Appliance Acts were adopted by Act of March 2, 1893, c. 196, 27 Stat. 531. Sections 8 through 10 were adopted by act of March 2, 1903, c. 976, 32 Stat. 943. Sections 11 through 16 were adopted by Act of April 14, 1910, c. 160, 36 Stat. 298. Prior to the 1910 Act, the language of the Safety Appliance Acts made no express provision for the movement of defective cars for purposes of repair. Section 4 of the 1910 Act added what is now Section 13 of Title 45, U.S.C.A., heretofore quoted.[2] The appellant in-

2. The appellant does not attempt to bring the movement within the express exception provided in Section 13. As stated in

brief,
"It should be made clear at this point that we do not argue that the move-

sists, however, that even in the absence of the 1910 Act, the courts had held that railroads could haul a defective car for the purpose of repair without incurring the penalties of the Act.[3] From these decisions and from some other cases permitting necessary movement,[4] the appellant argues that the statutory language should not be given literal effect when the result is to require the impossible.

In response, the United States insists that the requirements of the Safety Appliance Acts are absolute and that nothing less than literal compliance therewith will suffice.[5]

From a review of the cases cited by the parties, together with some independent research, we are constrained to agree with the United States.

We mention only a few of the considerations which lead us to that conclusion. For the enforcement of the Safety Appliance Acts, Congress, by Sections 6 and 13, heretofore quoted, imposed a statutory penalty; but did not, in express terms, provide a right of action for damages until the Federal Employers' Lia-

---

ment of the appellant's car from Norris Yards to the point of interchange came within the terms of the proviso of Section 13. This proviso is operative only when a car is being moved for purposes of repair *after the discovery* of the defect. In the case at bar the defect was discovered by the government inspectors when the car came to rest at the point of interchange."

3. Citing United States v. Atchison, T. & S. F. Ry. Co., D.C.N.D.Cal.1908, 167 F. 696; United States v. Rio Grande Western Ry. Co., 8 Cir., 1909, 174 F. 399; Siegel v. New York Cent. & H. R. R. R., C.C.M.D. Pa.1908, 178 F. 873; Galveston, H. & S. A. Ry. Co. v. United States, 5 Cir., 1912, 199 F. 891.

In further support of this argument of appellant's, we may add a quotation from a recognized authority collecting supporting and contra decisions:

"Before the 1910 amendment to the Safety Appliance Act the statute made no exception, save as indicated by the foregoing paragraph, even as to defective cars. Literally applied, the Act inhibited any movement of a defective car even for the purpose of repair. But the necessity of moving to the nearest repair point defective cars so discovered to be defective on the line was so manifest that the courts carved out an exception to the statute and generally held that defective cars might be moved to the nearest repair points provided they were excluded from commercial use and disassociated from cars so used.[8]

"8 Southern R. Co. v. Snyder, 6 Cir., 205 F. 868, 124 C.C.A. 60; Southern R. Co. v. Snyder, 6 Cir., 187 F. 492, 109 C.C.A. 344; United States v. Southern Pac. Co., 8 Cir., 169 F. 407, 94 C.C.A. 629; Chicago & N. W. R. Co. v. United States, 8 Cir., 168 F. 236, 93 C.C.A.

450, 21 L.R.A.,N.S., 690; United States v. Louisville & N. R. Co., 6 Cir., 156 F. 193. Contra: Chicago, M. & St. P. R. Co. v. United States, 8 Cir., 165 F. 423, 91 C.C.A. 373, 20 L.R.A.,N.S., 473; United States v. St. Louis I. M. & S. R. Co., D.C., 154 F. 416."

2 Roberts Federal Liabilities of Carriers (2nd ed.), Section 564.

4. Citing United States v. Louisville & N. R. Co., D.C.W.D.Ky.1907, 156 F. 195, affirmed 6 Cir., 1909, 167 F. 306; United States v. Louisville & J. Bridge & R. Co., 6 Cir., 1924, 1 F.2d 646.

5. Citing Delk v. St. Louis & San Francisco R. Co., 220 U.S. 580, 589, 31 S.Ct. 617, 55 L.Ed. 590; United States v. Colorado & N. W. R. Co., 8 Cir., 157 F. 321, 15 L.R.A.,N.S., 167; United States v. Atchison, T. & S. F. Ry. Co., 8 Cir., 163 F. 517, 518; United States v. Denver & R. G. Ry. Co., 8 Cir., 163 F. 519, 521; Chicago, M. & St. P. Ry. Co. v. United States, 8 Cir., 165 F. 423, 426; Chicago Junction Ry. Co. v. King, 7 Cir., 169 F. 372; Wabash R. Co. v. United States, 7 Cir., 172 F. 864, 865; United States v. Chicago & A. R. Co., 7 Cir., 250 F. 101, 102; Chesapeake & O. Ry. Co. v. United States, 6 Cir., 249 F. 805, 807; United States v. Trinity & B. V. Ry. Co., 5 Cir., 211 F. 448, 452; St. Louis Southwestern Ry. Co. of Texas v. United States, 5 Cir., 29 F.2d 568; United States v. Houston Belt Terminal Ry. Co., 5 Cir., 210 F.2d 421, 425; Atlantic Coast Line R. Co. v. United States, 4 Cir., 168 F. 175, 187; Norfolk & W. Ry. Co. v. United States, 4 Cir., 177 F. 623, 625; Chesapeake & O. Ry. Co. v. United States, 4 Cir., 226 F. 683, 686; Donegan v. Baltimore & N. Y. Ry. Co., 2 Cir., 165 F. 869, 871; United States v. Atchison, T. & S. F. Ry. Co., 9 Cir., 156 F.2d 457, 458.

bility Act, 45 U.S.C.A. § 51 et seq., granted a federal statutory right of action to railroad employees suffering injury while employed in interstate commerce. To various other persons within the class for whose protection the penal statute was passed, the courts, on common law principles, have sustained a right to recover damages proximately resulting from a violation of the Safety Appliance Acts, reasoning that such violation supplied the wrongful act essential to tort liability.[6]

The tort liability cases make it abundantly clear that Congress has imposed on the railroads, as the ones best fitted to discharge the burden,[7] an absolute liability for failure of safety appliances to function. That liability exists even in the case of a break without prior notice of defect. O'Donnell v. Elgin, J. & E. R. Co., 338 U.S. 384, 391, 394, 70 S.Ct. 200, 94 L.Ed. 187. Indeed, the absence of a "defect" cannot aid the railroad if the coupler fails to function. Carter v. Atlanta & St. A. B. R. Co., 338 U.S. 430, 434, 70 S.Ct. 226, 94 L.Ed. 236. Section 2, the section allegedly violated, does not mention the word "defect", but is written in simple, functional language making it unlawful for the railroad to haul or use a car not equipped with automatic couplers capable of operating by impact. To apply the language of the Supreme Court in St. Louis, Iron Mountain & So. Ry. Co. v. Taylor, 210 U.S. 281, 294, 295, 28 S.Ct. 616, 621, 52 L.Ed. 1061, constru-

ing the height of drawbar provisions of this same state, "There is no escape from the meaning of these words. Explanation cannot clarify them, and ought not to be employed to confuse them or lessen their significance."

If we must speak in terms of duty of inspection, we would say that such duty antedates the "defect", that the railroad must, at its peril, prevent the defect or insufficiency from arising. O'Donnell v. Elgin, J. & E. R. Co., supra. Actually, however, as has been stated, the statutory liability arises irrespective of any duty of inspection and regardless of a complete lack of fault on the part of the railroad.

The only exceptions are those provided in Sections 6 and 13 of the Act, that here pertinent being for the hauling of the car from the place where the equipment was first discovered to be defective or insecure to the nearest available point where it can be repaired. Expressio unius est exclusio alterius. A fortiori here the application of that familiar maxim of construction is required because the exception at first engrafted by some court's Footnote 2, supra, and which court-created exception applied to tort actions[8] was carefully delimited by Congress in several particulars, one being to preserve the tort action of railroad employees who might be injured or killed while the car is being hauled to the repair point.[9]

6. Texas & Pacific Ry. Co. v. Rigsby, 241 U.S. 33, 39, 36 S.Ct. 482, 60 L.Ed. 874; Carter v. Atlanta & St. A. B. R. Co., 338 U.S. 430, 434, 70 S.Ct. 226, 94 L.Ed. 236; O'Donnell v. Elgin, J. & E. R. Co., 338 U.S. 384, 391, 394, 70 S.Ct. 200, 94 L.Ed. 187; Affolder v. New York, C. & St. L. R. Co., 339 U.S. 96, 98, 70 S.Ct. 509, 94 L.Ed. 683; Jacobson v. New York, N. H. & H. R. Co., 1 Cir., 206 F. 2d 153; Shields v. Atlantic Coast L. R. Co., 350 U.S. 318, 325, 76 S.Ct. 386; Prosser on Torts, 2nd ed., Sec. 34.

7. "It is quite conceivable that Congress, contemplating the inevitable hardship of such injuries, and hoping to diminish the economic loss to the community resulting from them, should deem it wise to im-

pose their burdens upon those who could measurably control their causes, instead of upon those who are, in the main, helpless in that regard." St. Louis, Iron Mountain & So. Ry. Co. v. Taylor, 210 U.S. 281, 295, 296, 28 S.Ct. 616, 621, 52 L.Ed. 1061.

8. See Southern Ry. Co. v. Snyder, 6 Cir., 187 F. 492; on second appeal, 6 Cir., 205 F. 868.

9. " * * * nothing in this section shall be construed to relieve such carrier from liability in any remedial action for the death or injury of any railroad employee caused to such employee by reason of or in connection with the movement or hauling of such car with equipment which

That court-created exception having been delimited and narrowed by Congress in this and other respects, it does not now lie within the rightful power of the courts, in effect, to create another exception, possibly not so restricted, extending from the time when the equipment becomes so defective or insufficient that it will not function to the time when the railroad has an opportunity for inspection. No such exception appears in the statute or should be created by the courts.

The judgment is therefore

Affirmed.

is defective or insecure or which is not maintained in accordance with the requirements of sections 1–16 of this title * * *." 45 U.S.C.A. § 13.