**UNITED STATES v. KANSAS CITY TERMINAL RY. CO.**

No. 7507.

United States District Court,
W. D. Missouri, W. D.

June 13, 1952.

James O. Tolbert, Washington, D. C., Atty. U.S. Interstate Commerce Comm'n,

Atty. U. S. Interstate Commerce Comm'n, Sam M. Wear, U. S. Atty. Kansas City Mo., William Aull III, Asst. U. S. Atty., Lexington, Mo., for plaintiff.

Donald Nielson, Kansas City, Mo., and Horace F. Blackwell, Lexington, Mo., of Lathrop, Crane, Sawyer, Woodson, & Righter, Kansas City, Mo., for defendant.

REEVES, Chief Judge.

This is a civil action under the Safety Appliance Equipment Acts, 45 U.S.C.A. §§ 1–16. It is charged in the complaint that the defendant violated the provisions of Section 11 to 16 inclusive of said Title 45 U.S.C.A. and that such violation occurred on March 13, 1952, in the following particulars or manner:

> That the defendant "hauled on its line of railroad over a part of a highway of interstate commerce, one car, to wit: N Y C passenger car No. 9006 * * *
>
> "That on said date defendant hauled said car in and about Kansas City, Missouri, within the jurisdiction of this court, when the hand brakes on both ends of car were out of repair and inefficient, the brake lever of hand brake at 'A' end fouling the slot guide and the brake wheel of hand brake at 'B' end failing to turn, and when said car was not equipped with an efficient hand brake, as required by section 11, title 45 of said U. S. Code."

The plaintiff seeks judgment in the sum of $100 as a penalty as prescribed by the statute under which the action was brought.

It was admitted by the defendant that the car mentioned in the complaint was defective in the manner as alleged by the complainant. But the defendant denied that the car was hauled as alleged by the plaintiff.

The evidence showed that the car in question was brought into Kansas City over the lines of the Santa Fe Railway and that under an operating arrangement with the defendant trains brought into the Union Station at Kansas City are turned over to the defendant for switching, inspection and repairs. Practically all of the trunk railroads have such an arrangement with the defendant and the operating lines or trunk lines make no provision whatever for repairing their equipment or rolling stock in the terminal yards at Kansas City. This responsibility is assumed or taken over by the defendant as the agent for the trunk lines, and upon the arrival of a passenger train, as the one above mentioned, it automatically is placed under the control and direction of the defendant until repaired and fitted for departure or another run.

In the instant case the passenger train arriving in Kansas City over a Santa Fe line comprised approximately of 15 cars, and the car mentioned was the twelfth car back from the front. It was not intended that it should remain a part of the train arriving in Kansas City and departing from Kansas City but was designed to be switched on to another trunk line if fit to continue in operation. It should be stated that the defendant operates no lines of railway as contemplated by the Act. Immediately upon arrival of the train, the rear cars, including the one mentioned, were detached from the main train and placed on a nearby track for inspection and for convenience in continuing its journey, if properly fitted and equipped, on another trunk line. Immediately upon arrival the defendant's inspectors began at the front end of the train to make proper and orderly inspection of the equipment on each of the coaches. The fact that this car was detached from the train and placed on another track did not delay the inspection, for, as stated by counsel for the plaintiff in brief submitted, within 15 minutes the defendant's inspectors had checked the car in question and ordered it sent to the repair shop. It is the contention of the government that the act of the defendant in moving the car to another track was a violation of Section 13 of said Title 45 U.S. C.A.

1. Section 13 supra provides:

> "* * * That where any car shall have been properly equipped, as provided in sections 1–16 of this title, and such equipment shall have become defective or insecure while such car was being used by such carrier upon its line of railroad, such car may be hauled

from the place where such equipment was first discovered to be defective or insecure to the nearest available point where *such car can be repaired, without liability for the penalties imposed by this section or section 6 of this title, if such movement is necessary to make such repairs and such repairs cannot be made except at such repair point*". (Emphasis mine.)

It was assumed by the parties and tacitly agreed that the equipment became defective while being used on the line of the Atchison, Topeka & Santa Fe Railway Company. It is contended by counsel for plaintiff, however, that the defendant should not have taken over the car until after an inspection had been made. On this question, the defendant had no alternative. Moreover, the trunk line, that is the Santa Fe Railway Company, had no means for repairing its rolling stock at the terminal in Kansas City but by contractual arrangement the defendant not only took over the passenger coaches arriving in Kansas City but assumed the responsibility of inspection and making the repairs, if any necessary. The defendant was not hauling said car on its line of railway. At all times it was on the line of the Santa Fe. It simply detached said car for the purpose of inspection and rerouting, and in so doing placed it on another track so that it would be conveniently available for another trunk line, if it passed inspection.

As provided by statute, immediately after the defective condition was discovered the defendant met the requirement and mandate of the statute, which provides that: "such car may be hauled from the place where such equipment was first discovered to be defective or insecure to the nearest available point" for repairs. It did that very thing. In the meantime the government inspectors had been able to discover the defect and the insecurity of the brakes before the defendant, in the exercise of due and proper care, could make the discovery. They did not disclose to the defendant that the brakes were defective or insecure but became observers of a technical movement that a charge of violating the law might be placed against the defendant.

2. The exact point was covered by the Court of Appeals, this Circuit, in the case of Texas & P. Ry. Co. v. United States, 189 F.2d 749. In that case, as in this, the Mo. Pacific Railway Company brought its train of cars into Texarkana, Arkansas (or Texas as the case may be.) By a contractual arrangement with the Texas & Pacific Railway Company, defective cars were turned over to it by the Mo. Pacific Railway Company and such arrangement was practically identical with the arrangements between the Santa Fe and the defendant. In reversing the judgment of the trial court against the Texas & Pacific Railway the court said, 189 F.2d loc. cit. 751:

"* * * the joint yard employees who inspected the cars and found them defective, who moved them to the repair tracks, and who repaired the defects were Missouri-Pacific employees; and the facilities, including the engine, the tracks, and the tools used in the operation, were for the time being Missouri-Pacific facilities. The movement of the defective cars was by the Missouri-Pacific 'upon its line' within the meaning of the Safety Appliance Acts."

This is precisely applicable in this case, so that the defendant, at the time, was in all respects acting for and on behalf of a trunk line, namely, the Atchison, Topeka & Santa Fe Railway Company, which brought its train of cars into Kansas City, and said trunk line, through its agent, the defendant, did all the acts forming the basis of the complaint.

It follows that the issues should be found for the defendant.