# UNITED STATES
## v.
## HOUSTON BELT & TERMINAL RY. CO.

## HOUSTON BELT & TERMINAL RY. CO.
## v.
## UNITED STATES.
### No. 14371.

United States Court of Appeals, Fifth Circuit.

Feb. 9, 1954.

Brian S. Odem, U. S. Atty., Houston, Tex., Leo Meltzer, Atty., Dept. of Justice, Washington, D. C., Warren Olney III, Asst. Atty. Gen., Floyd R. Benny, Atty., Interstate Commerce Commission, Washington, D. C., of counsel, for United States.

Quentin Bates, M. S. McCorquodale, Fulbright, Crooker, Freeman & Bates, Houston, Tex., for Houston Belt & Terminal Ry. Co.

Before HOLMES, RUSSELL and RIVES, Circuit Judges.

RUSSELL, Circuit Judge.

Present for decision is whether the movement of three admittedly defective freight cars by the Houston Belt & Ter-

minal Railway Company constituted violations of the Safety Appliance Act.[1]

The cars in question were part of a train moved into the Settegast Yard at Houston, Texas, by the St. Louis Brownsville and Mexico Railway Company, hereinafter referred to as Brownsville, from its line,[2] at about 10:56 a. m., on March 21, 1951, and which stopped on track C–1. Thereafter, the train, including the defective cars, was taken over by Houston Belt & Terminal Railway Company, hereinafter referred to as Belt. All three cars were thereafter moved by locomotives and crews of Belt over the yard track to points within the yard. Based upon these movements the Government instituted action against Belt to recover the statutory penalty asserting a cause of action as to each car movement. The first cause of action involved two separate specified movements of a designated defective car within the yard. This car, at about 12:30 p. m., was found defective, and though the defective coupling on one end was remedied, the other coupling remained defective. The car was moved from track C–1 at about 1:50 p. m. and placed on track C–11 where, at about 2:25 p. m., it was moved to track A–36. This car later left the yard in an International-Great Northern train. The second cause of action involved a defective car which was, before movement from track C–1, discovered by a car inspector who placed a "bad order" card thereon. This car was moved from track C–1 at about 1:30 p. m., and placed on track C–11 about 1:40 p. m., and at about 2:25 p. m. moved to track A–32, and later removed to a repair track in the yard and repaired. As to the third cause of action, the defective car was moved from track C–1 at about 2:12 p. m. and about 2:40 p. m. moved to track C–2. About 4:45 p. m., a car inspector placed a "bad order" card on this car. About 5:00 p. m., this car was moved to track C–11 and

later removed to track M–1, a repair track in the yard.

The causes were tried upon a stipulation establishing the facts above recited, and which also sets forth the terms of an agreement, approved by the Interstate Commerce Commission, under which Belt became jointly owned and controlled by named "New Proprietary Lines" including Brownsville, among others, and the "Using Lines", including Brownsville and International-Great Northern, among others, became the joint users of the Terminal.

The trial court adjudged the defective car movement embraced in the first count a violation of the statute. As to the second and third counts it held, upon the authority of Texas & P. Ry. Co. v. United States, 8 Cir., 189 F.2d 749, that since these movements progressed toward, and ended at, the repair tracks, and since this was the safest, most expeditious and practicable way of repairing said cars; "and that this movement of some 800 feet by the defendant was made pursuant to and under the terms" of the contract referred to above, the defendant did not violate the statute by such movements within the confines of the yard. Belt appeals from the judgment against it and the United States appeals from that part of the judgment which acquitted Belt.

To support its claim of error, Belt relies upon the provisions of the operating agreement to establish that its switching movements were being performed as agent for Brownsville, and were movements by Brownsville "upon its line" within the meaning of the statute. It insists, upon the same basis of reasoning, that the part of the judgment in its favor is correct. The unreasonableness of a contrary application of the statute to the facts of the case is urged and primary reliance is based upon Texas & P. Ry. Co. v. United States, supra, and

1. 45 U.S.C.A. §§ 1 to 16, with particular reference to Section 13.

2. Brownsville was charged with three violations of the Safety Appliance Act be-

cause of its movement of these three cars and paid a penalty of $100 for each violation.

424

U. S. v. Kansas City Terminal Railway Co., D.C., 105 F.Supp. 514.

For its case, likewise in part support and in part challenge of the trial court's conclusions, the United States principally contends that as it is shown that the cars were hauled by Belt's locomotives and crews over a line of railroad operated by it, the movement was by Belt, regardless of the claim of agency, and, since the cars did not become defective on Belt's line, Belt is not within the privilege of the statute, 45 U.S.C.A. § 13, especially when the movements are considered in connection with the cognate provision of Section 14, Title 45 U. S.C.A.[3] Counsel for the Government do not challenge the correctness of the decision in Texas & P. Ry. Co. case, supra, as applied to the operating agreement and the circumstances there present. It is strenuously urged that under the terms of the agreement presented in this case the holding is not applicable and should not be followed.

Both parties present their views of the construction and effect of the contract which the trial court found controlling. Without reciting its terms, we only state that we agree with the Government that there is substantial difference between the operating agreement before us and that considered by the Court of Appeals for the Eighth Circuit in the Texas & P. R. Ry. Co. case, supra, as well as in the circumstances under which the cars in question in each case were hauled. The agreement before us contains no provision relating to the repair of defective cars, nor any provision for actual joint operations over the lines in the yard. As a matter of fact, these lines are placed within the exclusive control of Belt, except that, as only expressly stated for the purpose of computations for apportionment and payment by the "Using Lines" of the operating expenses of Belt, the services performed by Belt for the "Using Lines" is to be considered as use of the facilities by the "Using Lines",—in this case Brownsville.[4]

■■■ There can be no question that under the terms of the statute and the well settled jurisprudence concerning it the hauling of the car involved in the first cause of action constituted a violation of the Act. This car was moved and proceeded only in interchange. Manifestly, a common carrier, as Belt concededly is, cannot, in effecting interchange, haul defective cars and claim immunity by reason of any agency claim or contract. As concerns the other two causes of action, while the preliminary forecast may be slightly clouded by provisions of the statute relating to repairs, the conclusion is, under the circumstances here, nevertheless the same. Brownsville's ownership jointly with other carriers, of the corporate Belt, did not make the Terminal tracks Brownsville's line. But even if the Terminal tracks could be so considered, there is no basis in the record for a finding that the immediate purpose of Belt in taking over the cars was to directly effectuate the statutory requirement imposed upon

3. Pertinent here the language of Section 13 reads as follows:
"* * * Provided, That where any car shall have been properly equipped, as provided in sections 1–16 of this title, and such equipment shall have become defective or insecure while such car was being used by such carrier upon its line of railroad, such car may be hauled from the place where such equipment was first discovered to be defective or insecure to the nearest available point where such car can be repaired, without liability for the penalties imposed by this section or section 6 of this title, if such movement is necessary to make such repairs and

such repairs cannot be made except at such repair point; * * *."
Section 14 provides in part: "Except that, within the limits specified in section 13 of this title the movement of a car with defective or insecure equipment may be made without incurring the penalty provided by the statutes, but shall in all other respects be unlawful * * *."

4. In referring to these items and the absence of others, we intend no intimation of the effectiveness of contractual provisions to bring carriers within the terms of the exceptive provision of the Safety Appliance Act, supra.

Brownsville to haul the equipment to the nearest point where the car could be repaired. In other words, Terminal accepted cars which had not become defective on its line for interchange and after discovery of the defect made movements of the cars other than to the repair tracks. If, as claimed, it was acting as agent of Brownsville, neither the principal nor the agent complied with the statute.[5]

 Belt, as a common carrier, having control over the operations of the Terminal, and indeed performing switching service to others than the "Using Lines" to and from industries served by Belt tracks is, in all such operations, subject to the terms of the statute. It was therefore incumbent upon it, if it would escape liability from the statutory penalty, to show that the movements in question were within the terms of the statute. Recognizing the broad and extended scope of the statute and the narrow line of privilege available for exception to its coverage, Belt must rely, as it does, upon its claim of agency. But agency alone, and especially where it is for an express and limited purpose, as is present here, does not avoid the impact and effect of the positive and mandatory provisions of the statute here involved. The duty of a carrier to refrain from hauling a defective car is an absolute one,[6] which generally may not be avoided by means of agency arrangements.[7] The statute, by

its terms, limits "the right of hauling a defective car for repairs, without penalty, to the carrier upon whose line of railroad the car was being used when the equipment became defective,"[8] and its provisions are such that arguments of convenience or practicability afford no basis for nullifying their effect.[9] This remedial statute is to be liberally construed to effectuate its humanitarian purpose to protect the lives and limbs of those engaged in the hazardous operation of railroading and the safety of the public generally. We conclude that the movement of each of the cars in question here by Belt was done in violation of the statute. If there results from this holding the inconvenience and inconsistency claimed, these follow from the terms and provisions of the statute and if relief therefrom is needed, it is a matter for Congress and not for the courts.

The trial court erred in finding that the car movements set forth in the second and third causes of action did not constitute violations of the Safety Appliance Act. Its judgment finding a violation as to the first cause of action was correct and it is affirmed. As to the second and third causes of action, the judgment is reversed and these claims remanded for further proceedings consistent with this opinion.

Judgment affirmed in part and in part reversed.

5. There being separate movements by the two carriers, Brownsville's penalty payments did not expiate Belt's violations.

6. St. Louis, Iron Mountain & S. R. Co. v. Taylor, 210 U.S. 281, 28 S.Ct. 616, 52 L. Ed. 1061; Chicago, Burlington & Quincy R. Co. v. United States, 220 U.S. 559, 31 S.Ct. 612, 55 L.Ed. 582; Louisville & Jeffersonville Bridge Co. v. United States, 249 U.S. 534, 539, 39 S.Ct. 355, 63 L. Ed. 757. See also United States v. Trinity & B. V. R. Co., 5 Cir., 211 F. 448; Chesapeake & O. R. Co. v. United States, 4 Cir., 226 F. 683, 686; St. Louis South Western Ry. Co. of Texas v. United States, 5 Cir., 29 F.2d 568.

7. Among others, United States v. Brooklyn Eastern Dist. Terminal, 249 U.S. 296, 39 S.Ct. 283, 63 L.Ed. 613; Union Stock Yard & Transit Co. v. United States, 308 U.S. 213, 220, 60 S.Ct. 193, 84 L. Ed. 198; Oregon Short Line R. Co. v. United States, 9 Cir., 234 F. 584, 586.

8. Baltimore & O. S. W. R. Co. v. United States, 6 Cir., 242 F. 420, 424, error dismissed 248 U.S. 540, 39 S.Ct. 133, 63 L. Ed. 411; Cf. United States v. Trinity & B. V. Ry. Co., supra.

9. United States v. Atcheson, Topeka & S. F. Ry. Co., 9 Cir., 156 F.2d 457.