**UNITED STATES of America,
Plaintiff,**

v.

**PACIFIC ELECTRIC RAILWAY COMPANY, Defendant.**

**No. 63–506–EC.**

United States District Court
S. D. California,
Central Division.

Nov. 27, 1963.

Francis C. Whelan, U. S. Atty., Donald A. Fareed, Asst. U. S. Atty., Chief of Civil Section, by Morton H. Boren, Asst. U. S. Atty., for United States of America.

E. D. Yeomans and John H. Gordon, Los Angeles, Cal., for Pacific Electric Ry. Co.

CRARY, District Judge.

Plaintiff seeks Judgment against defendant Pacific Electric Railway Company for the sum of $250.00 on each of two causes of action as penalty for violation of the provisions of Title 45 United States Code §§ 1 to 16, inclusive, known as the Safety Appliance Acts, and the Order of the Interstate Commerce Commission of March 13, 1911, Title 49, C. F.R. §§ 131.1 to 131.20, made pursuant thereto, which prescribes the standards of equipment required to be maintained on railway cars.

It is the contention of plaintiff that defendant, on January 2, 1963, hauled or used two railway cars, to wit, box car CG 5966 and flat car UP 51657, in or about Los Nietos, California, "on its line" at a time when each of said cars

was not equipped with proper safety devices as required by the above mentioned statute and order.

It is agreed by the parties (Pre-trial Order, pages 1 and 2) that the Southern Pacific Railway Company delivered the two cars involved to the defendant company at the Los Nietos facility on January 2, 1963, at which time each of the cars had defective safety appliances; car UP 51657 had a defective hand brake and car CG 5966 an inoperative coupler. Both cars were moved by defendant in the interchange facility. Car UP 51657 was repaired while in Los Nietos and car CG 5966 could have been repaired at the facility but was not.

It appears that defendant operated the Los Nietos facility (switching of cars and making up trains) pursuant to provisions of an agreement with Southern Pacific and leased the switch engines used by defendant from Southern Pacific, said engines being manned and operated by defendant personnel. It is agreed by the parties that defendant is a railroad engaged in interstate commerce and that the two cars involved were used in moving interstate commerce.

The court finds from the evidence that neither car UP 51657 nor CG 5966 was moved by defendant *only for the purpose of repair*. Section 11 of the Safety Appliance Act provides, in pertinent part:

> "It shall be unlawful for any common carrier subject to the provisions of Sections 11 to 16 of this title to haul, or permit to haul, or be used on its lines any car subject to the provisions of said sections not equipped with appliances provided for in said sections."

It appears from the evidence that the Southern Pacific owns the tracks in the Los Nietos facility. Defendant asserts that the moving of the cars in the facility is by the defendant company which company is reimbursed by Southern Pacific for the work and services re the movement of Southern Pacific cars. Defendant also urges by way of defense that the Southern Pacific is now being sued

by plaintiff for alleged violation of the laws here involved for movement of the same two defective cars on the same date, to wit, January 2, 1963. It is the understanding of the court, however, that the said action against the Southern Pacific Railway Company is based on *its* movement of the cars into the facility and its movement of the one not repaired out of the facility rather than the movement in the facility of the cars by defendant.

The only issue of fact (page 3 of Pre-trial Order) involved in the case is whether the defendant was acting as an agent of the Southern Pacific in moving the cars in question.

The defendant, in moving the cars as a part of the making up of the trains in which they were spotted, was acting either as an agent of the Southern Pacific or as an independent contractor. The court concludes that, for the reasons hereafter stated, liability is not dependent on this point, but that defendant is liable under either relationship.

The United States Court of Appeals, 5th Circuit, in United States v. Houston Belt & Terminal Railway Co., 210 F.2d 421 (1954), states at pages 424–25 of its opinion:

> "This car was moved and proceeded only in interchange. Manifestly, a common carrier, as Belt concededly is, cannot, in effecting interchange, haul defective cars and claim immunity by reason of any agency claim or contract.
>
> \*    \*    \*    \*    \*
>
> "But agency alone, and especially where it is for an express and limited purpose, as is present here, does not avoid the impact and effect of the positive and mandatory provisions of the statute here involved. The duty of a carrier to refrain from hauling a defective car is an absolute one,[6] which generally may not be avoided by means of agency arrangements."

The facts in the United States v. Indiana Harbor Belt Railroad Company, U.S.D.C., N.D.Ind., 224 F.Supp. 219 (cit-

ed by plaintiff), order therein in favor of plaintiff are not on "all fours" with the case at bar but it does appear that the defendant IHB's locomotive and crews operated, among other areas, over the tracks owned by the New York Central in Gibson Yard, Hammond, Indiana. It is stated on page 3 of the opinion as attached to plaintiff's supplemental brief herein [219 F.Supp. on page 220]:

"Gibson Yard is owned by the NYC, operated by the IHB, and used by both the NYC and the IHB;".

Cars of NYC coming into Gibson Yard were handled by IHB pursuant to a contract with NYC. The said contract provided in substance as follows:

"Without setting out the agreement, it provides in effect, insofar as applicable here, that the NYC will deliver cars to the IHB at the Gibson, Indiana yard, intended for interchange to the Milwaukee. IHB will then accept and handle the cars with its own crews, engines and cabooses and make delivery to the Milwaukee at its Bensenville, Illinois, yard. NYC agrees to compensate IHB for its services at the rate of $6.00 per car."

NYC further agreed to pay IHB for any repairs IHB made on NYC cars and to "indemnify and save harmless" IHB from all loss, damages, and so forth, growing out of the work of repairing cars and returning them from the location where they were repaired. IHB defended on the grounds it was acting as the NYC's agent and had not violated the Safety Appliance Act. In the IHB case, as in the case at bar, the United States charged NYC with violating the Safety Appliance Act in a separate action involving the defective brakes on the same car. NYC confessed Judgment in that case. The court observes, near the end of its opinion:

"The Safety Appliance Act is aimed at common carriers and imposes certain duties upon all carriers in the interest of public safety.

The IHB is a common carrier even though it may be acting at the moment under an agency agreement. The duty of a common carrier to refrain from hauling a defective car is absolute and generally cannot be avoided by means of agency agreements."

Defendant, in the IHB case, as in the case at bar, relied on Texas & P. Ry. Co. v. United States, (8th Cir. 1951) 189 F.2d 749. In that case the defendant railway and Missouri-Pacific jointly operated the facilities there involved, which were jointly owned, under a contract between the two roads. As stated by the court on page 751 of its opinion:

"* * * the joint yard employees who inspected the cars and found them defective, who moved them to the repair tracks, and who repaired the defects were Missouri-Pacific employees; and the facilities, including the engine, the tracks, and the tools used in the operation, were for the time being Missouri-Pacific facilities. The movement of the defective cars was by the Missouri-Pacific 'upon its line' within the meaning of the Safety Appliance Acts."

The court there held that in the circumstances the Texas & P. Ry. Co. was not liable because the Missouri-Pacific and not the Texas road moved the defective cars. The facts are clearly distinguishable from those in the case at bar and this court does not conclude that the Texas & P. Ry. Co. case supports defendant's contentions herein.

Whether the defendant Pacific Electric Railway Company in moving the cars was acting as agent for the Southern Pacific or for itself as an independent contractor, and therefore using the Southern Pacific tracks in the execution of its contract, the court believes defendant would be in violation of the Safety Appliance Acts and for the foregoing reasons holds the defendant to be in violation of said Acts, and that plaintiff take Judgment as prayed.

Counsel for plaintiff is requested to prepare, serve and lodge proposed Findings of Fact, Conclusions of Law, and Judgment, in accordance with Local Rule 7, as amended. The Judgment shall be a separate document.

This Memorandum Opinion is not to be deemed a final Judgment.